1  Aaron M. Ogletree, *pro se*
   4822 Russell Avenue
2  Parma, Ohio 44134-1863
   (440) 915-9154 (Mobile)
3  (216) 767-5020 (Home)
   aaron.ogletree@outlook.com
4
   *Pro se Plaintiff*
5

**FILED**

MAR 0 2 2021

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

6              UNITED STATES DISTRICT COURT
7              NORTHERN DISTRICT OF OHIO
8                    EASTERN DIVISION

9                                    1:21 CV 500
10

11 | AARON M. OGLETREE          | Case #
12 |     *Plaintiff,*           | **VERIFIED COMPLAINT**
13 | v.                         | Date: 02/25/2021
                                  Time: 12:00 PM
14 | Cleveland State University | Judge:                **JUDGE CALABRESE**
15 |     *Defendant.*
16

17

18

19

20

21

22

23

24

Plaintiff Aaron M. Ogletree, *pro se*, brings this action against defendants Cleveland State University Board of Trustees and Cleveland State University pursuant to 42 U.S.C. § 1983, *et seq.*, for the deprivation of rights protected by the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## STATEMENT OF THE PARTIES AND INDIVIDUALS

1. Plaintiff Aaron M. Ogletree ("Ogletree" or "Plaintiff") is a 24-year-old white male who resides at 4822 Russell Avenue, Parma, Ohio 44134-1863 and, for all times relevant to this action, was enrolled as a full-time student at Cleveland State University.

2. Defendant Cleveland State University Board of Trustees ("the Board") is the governing body of Cleveland State University ("CSU" or "the University") and is a political subdivision organized under the laws of the State of Ohio with its principal place of business located at 2121 Euclid Avenue, Cleveland, Ohio 44115-2214.

3. Defendant Cleveland State University ("CSU" or "the University") is an institution of higher education and a political subdivision organized under the laws of the State of Ohio with its principal place of business located at 2121 Euclid Avenue, Cleveland, Ohio 44115-2214.

4. Defendant Kelly M. King, esq. ("Mrs. King") is a female, who at all times relevant, to the best of Plaintiff's knowledge, served as the Associate General Counsel for the University's Office of General Counsel. Mrs. King is named in her official and individual capacities and can be served at 2121 Euclid Avenue, AC 327, Cleveland, Ohio 44115.

## STATEMENT OF JURISDICTION AND VENUE

5. Plaintiff incorporates all the above paragraphs as if fully rewritten herein.

6. Federal jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 as one or more of Plaintiff's claims arise "under the Constitution, laws, or treaties of the United States."

7. Supplemental jurisdiction over Plaintiff's state law claims is invoked pursuant to 28 U.S.C. § 1367 as the state law claims are so related to the claims within which this Court has original jurisdiction "that they form part of the same case or controversy under Article III of the United States Constitution."

8. Venue is conferred under 28 U.S.C. § 1391 (B)(2) as a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of Ohio. Further, venue is proper in the Cleveland Office pursuant to Local Rule 3.8 (a) of this Court as a substantial part of the events or omissions giving rise to the claims occurred within Cuyahoga County.

9. The Board may be served with summons and process under O.R.C. §3313.34 by leaving a copy with Board Chair Dr. C. Forrest Faison III, M.D. and is subject to the jurisdiction and venue of this Court.

## STATEMENT OF FACTS

10. On or about May 19th, 2020, Plaintiff was admitted to Cleveland State University with a declared major of Chemistry.

11. Following the completion of the Fall Semester of 2020, Plaintiff enrolled in the following five courses and paid-in-full all applicable tuition and fees for the Spring Semester of 2021: 1. Introductory Biology II; 2. Introductory Biology II Lab; 3. General Chemistry II; 4. General Chemistry II Lab; and 4. German II.

12. Due to the current global pandemic, many – if not most – courses offered by the University for the Spring Semester of 2021 are being provided in a remote format where students access and attend their courses using Blackboard and/or Zoom.

13. All students attending courses or examinations in-person on the University campus are required to complete a Daily Health Assessment ("DHA") to determine if it is safe for the student to be on campus.

14. Students who fail the DHA or test positive for COVID-19 are prohibited from attending courses or examinations on campus.

15. Students who attend their courses remotely, including Plaintiff, often do so from their own homes, bedrooms, offices, dorms, and other locations where there is a reasonable expectation of privacy using their own personal and private devices.

16. Plaintiff is registered with and receives accommodations for all the above courses through the Office of Disability Services ("ODS") of the University.

17. One ODS approved accommodation is the extension of time to complete examinations which are proctored by the Testing Services of the University.

18. On or about February 17th, 2021, at 12:34 PM Testing Services proctored the first exam for Plaintiff's General Chemistry II course which was scheduled for February 17th, 2021, at 12:10 PM.

19. On or about February 17th, 2021, at 10:25 AM Testing Services emailed Plaintiff at his University email with instructions for the scheduled exam and notified him that the proctors would be "checking [his] ID, [his] surroundings and [his] materials…"

20. On or about February 17th, 2021, at approximately 12:30 AM Testing Services proctors conducted a search of Plaintiff and his surroundings by requiring Plaintiff to pan his laptop's webcam around his bedroom for the proctors and all present students to see.

21. The search conducted by Testing Services proctors yielded no evidence of violation of University policies, laws, or any other evidence of misconduct or cheating and the proctors provided Plaintiff with the password to enter the examination.

22. The proctors monitored Plaintiff as he took his examination through his laptop's webcam.

23. On or about February 17th, 2021, at approximately 1:15 PM, Plaintiff submitted his examination and received a final score of 95% and 99% with the addition of the four points he received from the "cleanup quiz" administered after the examination.

24. Plaintiff reasonably believed the search policy of the University was officially withdrawn after having disputed the same policy present in an instructor's syllabus which was withdrawn as a result.

25. Unknown to Plaintiff before the 10:25 AM email, the University's Testing Services has a blanket policy requiring all students taking examinations remotely to submit to a search of their surroundings before being given the password to enter the exam.

26. This search conducted by the University's Testing Services proctors is visible to all students present in the Zoom meeting.

27. Due to the current global pandemic, students who are immunocompromised, have immunocompromised relatives, fail the DHA, or test positive for COVID-19 cannot opt-out of the blanket search requirement as they are prohibited from appearing on campus until authorization is granted by the university or because it would threaten their own personal health and/or the health of their relatives.

28. A student who attempts to attend courses or examinations on-campus after having failed the DHA or testing positive for COVID-19 will face disciplinary action.

29. A student who refuses to submit to the search conducted by Testing Services proctors will not be given the password for the examination and/or their examination score will be recorded as a zero.

30. The majority of students attending the University are adults, however, there may be individuals under the age of 18 as well.

## COUNT I – FOURTH AMENDMENT VIOLATIONS

31. Plaintiff incorporates all the above paragraphs as if fully rewritten herein.

32. Plaintiff brings this claim against all Defendants, jointly and severally.

33. Plaintiff brings this claim pursuant to 42 U.S.C. § 1983, *et seq.*, for conducting unreasonable searches and seizure of Plaintiff and his personal devices in contravention to the protections guaranteed by the Fourth Amendment to the U.S. Constitution.

34. O.R.C. §2744.09(E) exempts this claim from R.C. Chapter 2744 immunity as the claim arises from alleged violations of the U.S. Constitution. Additionally, R.C. §2744.03(6)(a) and (b) exempt this claim from R.C. Chapter 2744 immunity as the employee's acts or omissions were manifestly outside the scope of the

employee's employment or official responsibilities and/or the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner. Finally, R.C. §2744.03(A)(2) provides that a political subdivision is not immune from liability if the involved employee's conduct is negligent.

35. Defendants are not entitled to qualified immunity as this Complaint alleges a violation of a constitutional right which was clearly established at the time of the Defendant's misconduct.

36. Defendants are persons for purposes of 42 U.S.C. § 1983 liability.

37. Defendants are final policy makers for purposes of 42 U.S.C. §1983 liability.

38. Defendants acted under color of law while providing higher education services as a political subdivision of the State of Ohio.

39. Plaintiff had reasonably believed the blanket search policy implemented by Defendants to have been withdrawn as a result of his dispute of the policy prior to the start of the semester.

40. Defendants were fully aware of Plaintiff's intention to refuse any searches conducted under such a policy.

41. Plaintiff was surprised by the 10:25 AM email notifying him of Defendant's intention to search him and his workspace only hours before the exam was scheduled to begin.

42. Due to Defendant's delayed notification, Plaintiff was not provided reasonable time to arrange for the examination to be conducted on-campus to opt-out of Defendant's search policy.

43. Even if Plaintiff was given reasonable notification of Defendant's intention to conduct the search, Plaintiff would not have been able to opt-out of the search as he fails the DHA and he has safety concerns for himself and his immunocompromised relatives preventing him from attending courses or examinations on-campus.

44. Plaintiff was reluctantly submitted to Defendant's search under duress as he was aware he would have received a zero on his exam had he not done so.

45. Defendant's blanket search policy lacks individualized suspicion or evidence of past or ongoing violation of University policy or any laws.

46. Defendant's blanket search policy is exceptionally broad and grants the University the authority to search students, their private workspaces, and their private devices.

47. Defendant's blanket search policy lacks evidence that any search conducted as a result of the invocation of the policy will uncover evidence of any student violation past or ongoing violation of University policy or the law.

48. Defendant's blanket search policy is unreasonable given the age of the students, the nature of the alleged infraction, and the extensive breach of privacy that would result from a search within the scope of the policy; even when considering the University's legitimate interest in enforcing its policies and maintaining academic integrity.

## COUNT II – FOURTEENTH AMENDMENT DUE PROCESS CLAUSE VIOLATIONS

49. Plaintiff incorporates all the above paragraphs as if fully rewritten herein.

50. Plaintiff brings this claim against all Defendants, jointly and severally.

51. Plaintiff brings this claim pursuant to 42 U.S.C. § 1983, *et seq.*, for conducting unreasonable searches and seizure of Plaintiff and his personal devices in contravention to the protections guaranteed by the Fourth Amendment to the U.S. Constitution without affording him proper due process as prescribed by the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

52. O.R.C. §2744.09(E) exempts this claim from R.C. Chapter 2744 immunity as the claim arises from alleged violations of the U.S. Constitution. Additionally, R.C. §2744.03(6)(a) and (b) exempt this claim from R.C. Chapter 2744 immunity as the employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities and/or the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner. Finally, R.C. §2744.03(A)(2) provides that a political subdivision is not immune from liability if the involved employee's conduct is negligent.

53. Defendants are not entitled to qualified immunity as this Complaint alleges a violation of a constitutional right which was clearly established at the time of the Defendant's misconduct.
54. Defendants are persons for purposes of 42 U.S.C. § 1983 liability.
55. Defendants are final policy makers for purposes of 42 U.S.C. §1983 liability.
56. Defendants acted under color of law while providing higher education services as a political subdivision of the State of Ohio.
57. Defendants did not obtain a search warrant authorizing them to search Plaintiff prior to his examination.
58. Defendants did not have reasonable suspicion that Plaintiff violated or was violating and University policy or any laws.
59. Defendants did not limit their search to a scope which was reasonable given their suspicions and information.
60. Defendants did not obtain Plaintiff's consent prior to conducting their search.
61. Defendants coerced Plaintiff to submit to their search under threat of receiving a grade of zero on his General Chemistry examination.
62. Defendants did not provide Plaintiff any reasonable ability to opt-out of their blanket search policy.

## COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

63. Plaintiff incorporates all the above paragraphs as if fully rewritten herein.
64. Plaintiff brings this claim against all Defendants, jointly and severally.
65. O.R.C. §2744.09(E) exempts this claim from R.C. Chapter 2744 immunity as the claim arises from alleged violations of the U.S. Constitution. Additionally, R.C. §2744.03(6)(a) and (b) exempt this claim from R.C. Chapter 2744 immunity as the employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities and/or the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner. Finally, R.C. §2744.03(A)(2) provides that a political subdivision is not immune from liability if the involved employee's conduct is negligent.

66. Defendants are not entitled to qualified immunity as this Complaint alleges a violation of a constitutional right which was clearly established at the time of the Defendant's misconduct.

67. Plaintiff suffered mental anguish when he was subjected to an illegal search under threat of the entry of unfavorable grades to his academic record.

68. Plaintiff suffered mental anguish and embarrassment when the search he was subjected to disclosed personal and private information such as his social security number and number of prescriptions he takes and their names were disclosed to other students and the proctors present in the Zoom meeting during the course of the search.

69. Plaintiff suffered mental anguish and embarrassment when the search he was subjected to forced him to display his bedroom in its entirety to the other students and proctors present in the Zoom meeting.

70. When conducting an illegal search and refusing to remove their blanket search policy, Defendants either intended to cause Plaintiff emotional distress or knew or should have known that their actions would result in serious emotional distress to Plaintiff.

71. Defendant's conduct was so egregious as to go beyond all bounds of decency and was such that can be considered utterly intolerable in a civilized society.

72. Defendant's actions were the proximate cause of Plaintiff's psychic injury.

73. The mental anguish suffered by Plaintiff has existed since he was subjected to Defendant's illegal policies and searched against his will and is of a nature that no reasonable person could be expected to endure.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Aaron M. Ogletree respectfully requests that this Honorable Court award the following requested relief and such other relief as this Honorable Court deems just and proper in order to make Plaintiff whole:

1. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

2. Entering an order enjoining and restraining Defendants Cleveland State University, Cleveland State University Board of Trustees, Cleveland State University Office of General Counsel, Mrs. King, and all officers, agents, employees, and entities under the Defendant's control from:

    a. Implementing or enforcing blanket search policies authorizing the search of students or visitors of the University for any reason;

    b. Attempting to search students without reasonable suspicion or evidence of past or ongoing violation of University policy or any laws; and

    c. Any other protections this Court deems just and proper to protect Plaintiff and all other students of the University;

3. Awarding Plaintiff $14,000.00;

4. Awarding Plaintiff reasonable attorney's fees pursuant to the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. §1988(b); and

5. Awarding Plaintiff the costs of this action.

## VERIFICATION

Pursuant to 28 U.S.C. §1746, Plaintiff Aaron M. Ogletree hereby declares and verifies under penalty of perjury that the facts and information contained in the foregoing Verified Complaint are true and correct to the best of his knowledge.

DATED: 02/25/2021

Respectfully submitted,
s/ Aaron M. Ogletree
Aaron M. Ogletree
4822 Russell Avenue
Parma, Ohio 44134-1863
(440) 915-9154 (Mobile)
(216) 767-5020 (Home)
Aaron.ogletree@outlook.com

# Exhibit I