IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Aaron M. Ogletree** | ) CASE NO. 1:21-cv-500 |
| Plaintiff, | ) |
| vs. | ) JUDGE J. PHILLIP CALABRESE |
| | ) **Second amended complaint** |
| **Cleveland State University** | ) |
| c/o President Harlan M. Sands, | ) |
| and | ) |
| **Cleveland State University Board of Trustees** | ) |
| *In their official capacities,* | ) |
| and | ) |
| **Harlan M. Sands** | ) |
| *In his official capacity as President of Cleveland State University,* | ) |
| Defendants. | ) |

## Introduction

1. In an age of online learning conceived in the progress of technology and accelerated by a global pandemic, students increasingly learn and test online. Many, if not most, will invariably do so from home. This case involves a public university using technology to do virtually what it never could in-person: have a teacher enter and preemptively search students' homes—and even their bedrooms—on the mere notion that any student *might* try to cheat on a remote test. Despite a litany of other safeguards against cheating, the university conducts these searches without either a warrant or reasonable

suspicion to believe they would uncover any evidence of wrongdoing.

2. "At the very core" of the Fourth Amendment is the right to "be free from unreasonable government intrusion" inside the home. *Silverman v. United States*, 365 U.S. 505, 511 (1961). If there is any quintessential location where an individual has a reasonable expectation of privacy, it is the home. The university's policy of preemptively searching students' homes is neither reasonable nor necessary. It violates the Fourth and Fourteenth Amendments.

## Parties

3. At all times relevant to this lawsuit, Ogletree was a United States citizen and resident of the State of Ohio.

4. Cleveland State University ("CSU") is a public university located in Ohio and a "person" within the meaning of 42 U.S.C. § 1983 for purposes of the relief sought in this complaint.

5. The Cleveland State University Board of Trustees ("the Board") is the governing body of CSU and constitutes a "person" within the meaning of 42 U.S.C. § 1983.

6. Harlan M. Sands is President of CSU and a "person" within the meaning of 42 U.S.C. § 1983.

7. At all times relevant to this lawsuit, Defendants were state actors, acting under color of state law.

8. Sands and the Board are policymaking officials for CSU.

## Jurisdiction and venue

9. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because the claims involved arise under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343(a)(3).

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to this lawsuit occurred in this District.

## Factual allegations

11. Like many colleges and universities, CSU offers some classes remotely.

12. Though its use of online classes has increased during the COVID pandemic, CSU's use of remote learning predates the pandemic.

13. To facilitate remote learning, in March 2017, CSU published a document outlining its policies and procedures for online classes, called "Required Procedures & Recommended Practices to Address Security and Quality of eLearning Courses."

14. CSU issued this policy document to "establish campus-wide guidelines on academic integrity and quality of eLearning courses as well as to articulate the responsibilities of all parties involved (faculty, staff, students, and administration) at Cleveland State University."

15. The policy document contains "required procedures and recommended practices" for faculty who teach online and test their students remotely.

16. According to CSU, it developed these remote-learning guidelines in consultation with several sources. They included "recommendations from the University Electronic Learning Committee following a review of the

3

literature on best practices, and experiences of faculty members with teaching experience in online courses, in consultation with the Director of the Center for eLearning."

17. The policy document contains several steps designed to ensure the academic integrity of remote learning and testing—in other words, to prevent student cheating.

18. At the start, CSU requires that students taking online classes have a photograph in CSU's database so as "to ensure that the same student enrolled in the course is attending the online lectures and taking the exams."

19. The policy document then lists several suggested best-practices to reduce the chances of cheating on a remote test. By way of just a few examples, it suggests teachers: randomize questions in a test so that students get questions in different orders; use timed tests; use testing software to track how long it takes a student to answer each question so that suspicious outliers can be identified; and, require students to turn off cell phones and other communication devices. Most significantly in this case, the CSU policy document also suggests teachers use "remote proctoring tools for enhanced online test security and proctoring."

*CSU has several noninvasive remote-testing tools to protect against cheating.*

20. CSU has several "proctoring tools" available to administer remote tests.

21. The first of these tools is called the "Respondus LockDown Browser."

22. The LockDown Browser is just what it sounds like: a locked browser for use during remote testing. According to CSU's eLearning center, students using

4

LockDown Browser "are unable to print, copy, go to another URL, or access other applications" during a remote test.

23. A second remote-testing tool CSU has is the "Respondus Monitor," a tool that can be "used in conjunction with LockDown Browser." CSU describes the Monitor as "a companion product for LockDown Browser that enables institutions to protect the integrity of non-proctored, online exams."

24. The Respondus Monitor uses a student's webcam to watch and record the student during the test. It uses artificial intelligence to monitor students for any potentially suspicious movements or behaviors. It then flags any such incidents for video review by the instructor or a proctor.

25. At one time, CSU's third remote-testing tool was known as "Tegrity Remote Proctoring." It was an "alternative to Respondus Monitor" and it too recorded students by webcam during a test for review by an instructor.

26. The LockDown Browser, when used in conjunction with either the Respondus Monitor or Tegrity Remote Proctoring, are designed to preserve the integrity of remote tests and are adequate to do so.

27. At some point, CSU stopped using Tegrity Remote Proctoring and replaced it with a different proctoring tool.

<u>*One CSU online-testing policy calls for*</u>
<u>*suspicionless video searches inside students' homes*</u>.

28. CSU's third-remote proctoring tool is now known as "Honorlock."

29. Honorlock is a program run through Google's Chrome browser.

30. Honorlock requires two stages of identification. The student must show his or

5

her face for visual identification. The student must then show a photo ID for the sake of verification.

31. Like Respondus Monitor and Tegrity Remote Proctoring, Honorlock also requires students to take their tests on camera, and to be recorded so the video can be reviewed if necessary. But Honorlock goes a step further.

32. When using Honorlock, CSU requires a "room scan."

33. Under the room scan policy, students must show the professor or proctor the entire room they are in for visual inspection. CSU requires students to do this by scanning their webcams around a full 360 degrees.

34. CSU has not deemed the room scan indispensable to preserve the integrity of an online test because it does not require a full room scan in every class that conducts remote testing.

35. Upon information and belief, in some CSU classes, remote tests are conducted using the other available proctoring tools—or none of them.

36. When CSU requires a full room scan for a remote test, students may not opt-out of this preemptive video search.

37. Upon information and belief, a student who refuses the video search will not be permitted to take the test at issue, which will harm their grade or in some cases, cause them to fail the class.

*Aaron Ogletree is a CSU student who, like many others, takes classes remotely during the pandemic.*

38. CSU admitted Ogletree in May 2020.

39. Around the end of the Fall 2020 semester, he enrolled in five classes for the

6

following Spring.

40. Because of the pandemic, most CSU classes during the Spring 2021 semester were conducted remotely.

41. Many CSU students attend remote classes from their homes, dorm rooms, and other places where they have a reasonable expectation of privacy from government intrusion.

42. For any student wishing to attend a class in-person during the pandemic, CSU requires a "Daily Health Assessment" screening. The University prohibits students who fail the Assessment from attending classes on campus.

43. Ogletree attended his Spring 2021 classes remotely from his home using his personal computer.

44. Ogletree lives with his mother, brother, and sister, the latter of whom is a minor.

45. In-person attendance is not an option for Ogletree during the pandemic. He has various health issues that impact his immune system and put him at particular risk to the COVID pandemic.

46. Because of his health issues, Ogletree does not pass the Daily Health Assessment.

47. He therefore would not be permitted to take his tests in-person on campus.

48. Ogletree also has family members who are at high-risk to the pandemic.

*Without any reasonable suspicion, CSU searched Ogletree's bedroom before permitting him to take a remote test.*

49. On January 11, 2021, before the start of the Spring Semester, Ogletree disputed a policy in the Syllabus for his General Chemistry II class because of concerns over students' privacy rights. The policy at issue stated: "The proctors and I reserve the right to ask any student, before, during, or after an exam to show their surroundings, screen, and/or work area. We will send you a private chat to ask you to do this. If you do not see the chat message, I will use the microphone to ask you to check the chat."

50. The Professor removed this policy three days later.

51. On February 17, 2021, Ogletree had a 12:30 p.m. remote test scheduled in General Chemistry II.

52. Despite the Professor's change to the Syllabus a month earlier, just before 10:30 a.m., CSU's Testing Services emailed Ogletree with the exam instructions, which said that proctors would be "checking [his] ID, [his] surroundings and [his] materials. . . ."

53. Upon information and belief, CSU requires students to take remote tests in a location where they will be alone and uninterrupted.

54. Because Ogletree lives with his family, the only private space available where he could take the test both alone and uninterrupted was his bedroom.

55. Ogletree believed that if he did not allow CSU to search his "surroundings" he would be barred from the test and would therefore fail the course.

56. Accordingly, at 12:30 p.m. CSU searched Ogletree's bedroom by requiring

8

him to pan his laptop's webcam around his entire bedroom. This video of Ogletree's bedroom was visible to both the CSU proctor and his classmates.

57. The preemptive video search yielded neither evidence of any CSU policy violation nor any other evidence of misconduct or cheating.

58. CSU then permitted Ogletree to take the test.

59. For the entirety of the approximately 40 minutes Ogletree took to complete the test, a CSU proctor monitored Ogletree and his classmates by their webcams.

60. On February 22, 2021, CSU's Director of Testing emailed Ogletree stating that the preemptive video search is CSU policy, explaining it is "part of the check-in process and required as a stated academic integrity procedure."

61. CSU's "Required Procedures & Recommended Practices to Address Security and Quality of eLearning Courses" policy document does not list a mandatory room scan as either a required or suggested procedure to preserve academic integrity.

## Count One – Injunctive and declaratory relief under the Fourth and Fourteenth Amendments

62. Ogletree realleges each and every allegation set forth above as if fully rewritten.

63. Ogletree and other students at CSU have a reasonable expectation of privacy within their homes, including in their bedrooms and other living spaces.

64. Their expectations of privacy are reasonable.

65. CSU's "room scan" policy requiring inspection of students' homes by video

9

before a remote test is a search within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution.

66. CSU conducts these video searches without a warrant.

67. CSU had no reasonable suspicion to believe searching Ogletree's home by video would uncover violation of any University rules or policies regarding the integrity of remote tests.

68. CSU conducts similar video searches of other students without reasonable suspicion to believe the search of any particular student's home would uncover violation of any University rules or policies regarding the integrity of remote tests.

69. CSU's video searches are unreasonable in scope.

70. CSU does not conduct these video searches as described for either health- or public-safety purposes.

71. CSU's video searches as described above violate Ogletree's and other students' rights under the Fourth and Fourteenth Amendments.

**Wherefore,** Ogletree prays for judgment against Defendants for:

(a) equitable and prospective injunctive relief against Defendants, enjoining them from conducting suspicionless video searches of students' homes as part of the University's remote-testing process;

(b) a declaratory judgment holding that Defendants have violated Ogletree's and other students' constitutional rights as described above;

(c) attorneys' fees and costs of suit under 42 U.S.C. § 1988, 42 U.S.C. § 2000cc-2(a), and other applicable federal laws; and,

(d) such other appropriate relief as the Court deems just.

Respectfully submitted,

/s/ Matthew D. Besser
Cathleen M. Bolek (0059884)
Matthew D. Besser (0078071)
**BOLEK BESSER GLESIUS LLC**
Monarch Centre, Suite 302
5885 Landerbrook Drive
Cleveland, Ohio 44124
T 216.464.3004
F 866.542.0743
cbolek@bolekbesser.com
mbesser@bolekbesser.com

*Counsel for Plaintiff*

## Certificate of service

The undersigned hereby certifies that a copy of the foregoing was filed electronically this 10th day of May, 2021 and served by operation of the Court's electronic filing system on:

Todd R. Marti
Ashley A. Barbone

*Counsel for Defendants*

/s/ Matthew D. Besser
*Counsel for Plaintiff*

11