*AARON M. OGLETREE*

*vs.*

*CLEVELAND STATE UNIVERSITY*

Deposition of

**Aaron Ogletree**

September 03, 2021



390 S. Washington Avenue
Columbus, Ohio 43215

**614.460.5000 · 800.229.0675**

fax 614.460.5566

www.priohio.com · pri@priohio.com

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF OHIO
 2                    EASTERN DIVISION

 3
    AARON M. OGLETREE,              )
 4                                  )
           Plaintiff,              )
 5                                  )
           vs.                     )   Civil Action No.
 6                                  )   1:21-cv-00500
    CLEVELAND STATE                )
 7  UNIVERSITY, ET AL.,            )
                                    )
 8         Defendants.             )

 9

10

11

12        REMOTE VIDEOCONFERENCE DEPOSITION OF

13                 AARON M. OGLETREE

14

15

16     Taken via Zoom with all parties in their
                respective locations.
17

18

19

20     on September 3, 2021, at 10:03 a.m.

21

22          Reported by: Rhonda Lawrence

23

24                    -=0=-
```

Page 2

1   APPEARANCES:

2          Matthew Besser
           BOLEK BESSER GLESIUS
3          Monarch Centre
           5885 Landerbrook Drive, Suite 302
4          Cleveland, Ohio 44124
           216.464.3004
5          mbesser@bolekbesser.com

6              on behalf of the Plaintiff.

7

           Todd R. Marti
8          Ashley A. Barbone
           Lydia Fawzy
9          Assistant Attorneys General
           OHIO ATTORNEY GENERAL, DAVE YOST
10         Education Section
           30 East Broad Street, 16th Floor
11         Columbus, Ohio 43215
           614.644.7250
12         todd.marti@ohioattorneygeneral.gov
           ashley.barbone@ohioattorneygeneral.gov
13         lydia.fawzy@ohioattorneygeneral.gov

14             on behalf of the Defendants.

15

16

17

18

19

20

21

22

23                      -=0=-

24

1                        STIPULATIONS

2            It is stipulated by and among counsel

3    for the respective parties that the deposition

4    of AARON M. OGLETREE, the Plaintiff herein,

5    called by the Defendants under the applicable

6    Rules of Federal Civil Court Procedure, may be

7    taken at this time by the stenographic court

8    reporter and notary public pursuant to notice;

9    that said deposition may be reduced to writing

10   stenographically by the court reporter, whose

11   notes thereafter may be transcribed outside the

12   presence of the witness; and that the proof of

13   the official character and qualification of the

14   notary is waived.

15                        -=0=-

16

17

18

19

20

21

22

23

24

Page 4

```
 1                    INDEX OF EXAMINATION

 2                                             PAGE

 3    BY MR. MARTI:                              5

 4

 5

 6                    INDEX OF EXHIBITS

 7    EXHIBIT           DESCRIPTION            PAGE

 8      A      Cuyahoga County Auditor          10
             Report
 9
        B      CSU Test Proctoring for          12
10             Students

11      C      Email to King                    13

12      E      Email chain                      16

13      F      Email to King                    26

14      G      Email chain                      30

15      H      Email chain                      33

16      I      Email                            34

17      J      Verified Complaint               35

18      K      Emergency Motion for             37
             Preliminary Injunction
19
        L      Affidavit                        48
20

21    EXHIBIT           DESCRIPTION            PAGE

22      2      CSU Test Proctoring Resources    13

23

24
```

Page 5

 1                 AARON M. OGLETREE

 2  being first duly sworn, as hereinafter

 3  certified, deposes and says as follows:

 4                 CROSS-EXAMINATION

 5  BY MR. MARTI:

 6     Q.  Mr. Ogletree, my name is Todd Marti.

 7  We've spoke on the phone, but I don't think

 8  we've met face-to-face.  I represent the

 9  defendants in this case.

10          We're here to take your deposition

11  today.  Have you ever had your deposition taken

12  before?

13     A.  I have not.

14     Q.  Have you ever testified in court before?

15     A.  I have not.

16     Q.  Okay.  Well, let me explain what we're

17  trying to accomplish and how these things work

18  so that we're all working from the same set of

19  rules.  Our purpose here today is to pin down

20  certain facts that are relevant to your case.

21  The court reporter has sworn you in, and I'm

22  going to ask you a series of questions, and the

23  court reporter will write down anything that any

24  one of us may say.  It's just like you're in

 1   court testifying in front of a judge or jury.

 2   So it's really important that we're all paying

 3   close attention and taking care with our

 4   answers.

 5       A.  Okay.

 6       Q.  If I ask you a question and you don't

 7   hear it, will you agree to let me know?

 8       A.  Yes.

 9       Q.  If I ask you a question and you don't

10   understand that question, will you agree to let

11   me know?

12       A.  Yes.

13       Q.  Are you under the influence of alcohol

14   or any other medications that would impair your

15   ability to testify truthfully today?

16       A.  No.

17       Q.  Is there any reason why you can't

18   testify truthfully today?

19       A.  No.

20       Q.  Okay.  All right.  So if I ask you a

21   question and you answer and didn't tell me you

22   didn't understand and so forth, I'll assume it's

23   a full and complete answer.  Is that fair?

24       A.  Yes.

1      Q.  Okay.  Mr. Ogletree, I know this is

2   going to be a bit of a bone of contention, but

3   it's part of the standard procedure.  Could you

4   take your laptop and scan your immediate area,

5   please?

6           MR. BESSER:  Wait, wait.  No.  No.

7           MR. MARTI:  Well, that's standard

8   procedure.

9           MR. BESSER:  No.  First of all, no, it's

10  not.  Second, you're a state actor.  That's a

11  search.  We don't consent.  You can ask him if

12  there's anyone in the room.  You can ask him if

13  he's got any devices in the room.

14  BY MR. MARTI:

15      Q.  Do you have anyone else present with

16  you, Mr. Ogletree?

17      A.  I do not.  I have a dog in the room.

18      Q.  Well, that's fine.  Do you have any

19  materials with you now?

20      A.  I do not.

21          MR. MARTI:  Okay.  Well, I note your

22  objection.  I'm not going to interrupt the

23  deposition to call the court, but I do reserve

24  the right to raise this at a later date.

 1          MR. BESSER:  All right.

 2   BY MR. MARTI:

 3      Q.  Mr. Ogletree, can you -- let me ask,

 4   where are you physically today, Mr. Ogletree?

 5      A.  I'm currently in my bedroom.

 6      Q.  Okay.  So can you walk us through your

 7   educational background, please?

 8      A.  Yeah.  I graduated from Ohio Virtual

 9   Academy, attended Tri-C, transferred to CSU,

10   where I'm presently at.

11      Q.  How long were you at Tri-C?

12      A.  I had one semester, then a break in

13   between, and then another two semesters.

14      Q.  Okay.  And what did you study there?

15      A.  I initially started on criminal justice,

16   and then to associate's of science.

17      Q.  Okay.  And what are you studying at CSU?

18      A.  Chemistry.

19      Q.  Okay.  How far along into the program

20   are you?

21      A.  I am second semester.

22      Q.  So would you be a sophomore, then?

23      A.  Yes.

24      Q.  Okay.  All right.  Have you taken any

 1   online tests other than the one that we're

 2   litigating today during your time at Tri-C or

 3   CSU?

 4       A.  Yes.

 5       Q.  Can you describe for us how those tests

 6   were proctored?

 7       A.  Most of them had no proctoring.  This

 8   was the very first proctored test.

 9       Q.  This is the only proctored test you've

10   been involved in, then?

11       A.  Yes.

12       Q.  Okay.  Yesterday morning, I sent a

13   series of exhibits to you and your counsel.  Did

14   you receive those?

15       A.  Yes, I did.

16       Q.  Do you have them handy?

17       A.  Yes.

18       Q.  Okay.  Could you go to -- before we get

19   there, where -- what's your residential address,

20   Mr. Ogletree?

21       A.  It is 4822 Russell Avenue in Parma, Ohio

22   44134.

23       Q.  And is that the location where you took

24   the test that we're litigating today?

Page 10

1      A.  Yes, it is.

2      Q.  Okay.  Could you go to the document I

3   sent you that was marked as Exhibit A, please.

4      A.  Yes.

5                     -=0=-

6         (Deposition Exhibit A marked.)

7                     -=0=-

8   BY MR. MARTI:

9      Q.  Take a moment, look it over.  Take as

10  long as you like, and let me know when you're

11  ready to talk about it.

12     A.  Okay.

13     Q.  Okay.  I'll represent to you that this

14  is a document that the Cuyahoga County Auditor,

15  or whatever it's called in Cuyahoga County, has

16  on its website describing the property where you

17  live.  It indicates that the house has about

18  almost 1400 square feet.  Does that sound

19  accurate?

20     A.  I really can't say.  I'm not very good

21  at measurements; so...

22     Q.  Well, let's try a different metric here.

23  It indicates that it has nine rooms.  Does that

24  sound right?

```
 1      A.  Yeah, about.

 2      Q.  Okay.  And six bedrooms?

 3      A.  Five.

 4      Q.  Five.  Okay.  Maybe one's used for an

 5   office or something like that, other purposes?

 6      A.  (Nods.)

 7      Q.  One of the rules I should have gone over

 8   when we started is, because the court reporter

 9   is writing everything down, you have to say yes

10   or no.  I understood what you meant by shaking

11   your head, but for the record, you need to

12   answer yes or no.

13      A.  I apologize.

14          Yes, five bedrooms.

15      Q.  Okay.  And one of them is probably used

16   for some other purpose?

17      A.  Yes.

18      Q.  Okay.  So who resided in that house on

19   the day that you took the test in question?

20      A.  My mother, my younger brother, and my

21   younger sister, as well as myself.

22      Q.  Okay.  So your mother and two other

23   siblings?

24      A.  Yes.
```

Page 12

 1     Q.  So four people.  Were they all home when

 2  you took the exam?

 3     A.  Yes.

 4     Q.  Okay.  So if you could take a look at

 5  the document that I sent to you that was marked

 6  as Exhibit B.

 7                      -=0=-

 8        (Deposition Exhibit B marked.)

 9                      -=0=-

10  BY MR. MARTI:

11     Q.  Look that over and take as much time as

12  you'd like and let me know when you're ready to

13  talk about this.

14     A.  Okay.

15     Q.  Okay.  Have you seen this document

16  before?

17     A.  I have.

18     Q.  Okay.

19     A.  But not prior to the exam.

20     Q.  Okay.  When do you think you saw it?

21     A.  I can't remember.

22     Q.  So sometime before you took the exam

23  that we're dealing with today?

24     A.  I'm sorry, what was that?

Page 13

1      Q.  So did you say sometime before or after

2  the exam we're dealing with today?

3      A.  It was sometime after the exam.

4      Q.  After.  Okay.  Fair enough.

5          I also sent you a document that's marked

6  as Plaintiff's Exhibit 2.  If you could pull

7  that up, look at it, and let me know when you're

8  ready to talk about it.

9      A.  Okay.

10      Q.  All right.  Have you seen this document

11  before?

12      A.  I have.

13      Q.  Okay.  When do you think you saw it for

14  the first time?

15      A.  The same time, after the exam.

16      Q.  Sometime after the exam?

17      A.  (Nods.)

18      Q.  Okay.  Let's go to the document that I

19  sent you that's marked as Exhibit C.

20                    -=0=-

21          (Deposition Exhibit C marked.)

22                    -=0=-

23      A.  Okay.

24

1    BY MR. MARTI:

2        Q.  Have you seen this document before?

3        A.  Yes, I have.

4        Q.  And it appears to be an email that you

5    sent to Kelly King on January 18, 2021; is that

6    correct?

7        A.  That appears correct.

8        Q.  Go ahead.  I'm sorry.  I didn't mean to

9    cut you off.

10       A.  I would have to check my records to

11   verify, but it does appear to be from that date.

12       Q.  Okay.  Does it appear to be an authentic

13   copy of that email?

14       A.  It does.

15       Q.  Okay.  So if you go into the text of

16   that email -- let me figure out how many

17   sentences it is here.  So the fifth full

18   sentence in this email where it starts with the

19   words, "In this policy," do you see where I am?

20       A.  Yes.

21       Q.  Can you read that sentence into the

22   record for us, please?

23       A.  Sure.  In this policy, the instructor

24   claimed a right to ask students of this

Page 15

1    chemistry section to show her and/or the

2    proctors of the exam the protected private

3    spaces of students within this course.

4        Q.  Okay.  So what were you referring to

5    here?

6        A.  I was referring to a syllabus policy

7    which the professor stated there was a right to,

8    at any time, before or after or during the exam,

9    to have students show their workspaces.

10       Q.  So that's the scan that's at issue in

11   this case?

12       A.  Yes.

13       Q.  Okay.  So if we go down a few more

14   sentences a -- so that was the fifth sentence.

15   I think it's the sixth sentence.  It's the

16   sentence that starts with the words, "As I have

17   mentioned in previous emails."  Do you see where

18   I am?

19       A.  Yes.

20       Q.  Could you read that sentence for us,

21   please?

22       A.  As I have mentioned in previous emails,

23   while yes, it is true CSU has a legitimate

24   interest in preserving the integrity of the

1    exam, that does not constitute a reasonable

2    search as you should be aware.

3        Q.  So do you still recognize that CSU had a

4    legitimate interest in preserving the integrity

5    of the exam?

6        A.  I do.

7        Q.  And this email, I think we established,

8    was sent on January 18, 2021.  Any dispute about

9    that?

10       A.  I don't believe so.

11       Q.  Okay.  Great.

12           We're going to skip an exhibit.  We're

13   going to go to Exhibit E, as in Ed.

14                       -=0=-

15         (Deposition Exhibit E marked.)

16                       -=0=-

17       A.  Okay.

18   BY MR. MARTI:

19       Q.  Look it over, let me know when you're

20   ready to talk about it.

21       A.  Okay.

22       Q.  So it appears to be an email exchange

23   between you and Kelly King on February 17, 2021.

24   Do you have any reason to dispute that?

1       A.  I do not.

2       Q.  Do you have any reason to dispute the

3    authenticity of this document?

4       A.  No.

5       Q.  Okay.  I'm sorry, were you going to say

6    something?

7       A.  No.

8       Q.  So this is an email.  We have to sort of

9    read it backwards and start on the bottom of

10   page 1.  This is the first part of the email

11   exchange, as I understand it; is that correct?

12      A.  That is correct.

13      Q.  And this is an email that you received

14   from Testing Services about 10:25 a.m. on

15   February 17; is that correct?

16      A.  That sounds approximately correct.

17      Q.  Okay.  And that's about when you

18   received this email?

19      A.  Yes.

20      Q.  Okay.  And February 17th is the date of

21   the test in question, isn't it?

22      A.  I'm sorry, what was that?

23      Q.  February 17th was the test in question

24   here?

1      A.  That is correct.

2      Q.  Okay.  Could you read the second

3   sentence of that email into the record for us,

4   please?

5      A.  Yes.  It states, I will be checking your

6   ID, your surroundings, and your materials.  You

7   are allowed to have a nonprogrammable

8   calculator, blank scratch paper and the attached

9   formula sheet.

10     Q.  Okay.  So what did you understand

11   them -- this email to be referring to when it

12   says, I will be checking your ID and your

13   surroundings?

14     A.  It was very similar to the syllabus

15   policy, so I figured it was a similar room scan.

16     Q.  Okay.  Very good.

17         Going up further to your part of the

18   email exchange, the email that was sent at 10:40

19   a.m.  Do you see where I am?

20     A.  Yes.

21     Q.  Okay.  And that's about the time you

22   sent this email?

23     A.  That is approximately the time I sent

24   it.

Page 19

 1    Q.  Okay.  Great.

 2        If you could go to the

 3  second-to-the-last full paragraph in that email

 4  and read that into the record for us, please.

 5    A.  Are you referring to the one that begins

 6  with "Finally"?

 7    Q.  No, the one that says, "As a side note."

 8    A.  Okay.  As a side note, I currently have

 9  confidential settlement documents in the form of

10  late arriving 1099s scattered about my work area

11  and there is not enough time to secure them.

12  Any breach of confidentiality will be included

13  in claims brought against the University.

14    Q.  Okay.  Thank you.

15        So what documents were you referring to

16  here?

17        MR. BESSER:  Hold on a sec.  Aaron, you

18  can answer, but you know that you have to abide

19  by any contracts that you previously signed.  So

20  you can only answer to the extent that you

21  wouldn't be violating them.

22    A.  Those documents are confidential

23  settlement documents.

24    Q.  With who?

```
 1           MR. BESSER:  You can answer if you're

 2   allowed to without breaching.

 3      A.  I am not permitted to disclose that.

 4      Q.  Okay.  How many pages of documents were

 5   there?

 6      A.  I don't remember.

 7      Q.  More than five?

 8      A.  I really don't remember.

 9      Q.  How much space did they take up?

10      A.  That's a strange question.

11           MR. BESSER:  You can just answer if you

12   can, Aaron.

13      A.  Not much space.  It was approximately --

14   I can't answer that.

15      Q.  All right.  Well, let me try and give

16   you an example.  Do you know how big a legal pad

17   is?

18      A.  I do not.

19      Q.  Do you know how big an 8 and a half by

20   11 piece of paper is?

21      A.  Yes.

22      Q.  Do you know how big a ream of 8 and a

23   half by 11 paper is?

24      A.  Yes.
```

 1      Q.  Is it bigger than that?

 2      A.  No.

 3      Q.  Half that?

 4      A.  No.

 5      Q.  A quarter of that?

 6      A.  Potentially.

 7      Q.  Okay.  Were they bound or were they

 8  loose?

 9      A.  Loose.

10      Q.  Okay.  Were they spread out or were they

11  piled?

12      A.  Piled.

13      Q.  So one single pile?

14      A.  I believe so.

15      Q.  Okay.  Why couldn't you simply move

16  them?

17      A.  That's quite a few issues, actually.  I

18  was currently in the process of painting the

19  room, so the storage area which I had was

20  unavailable.  The only spot I had was my desk.

21      Q.  Any reason why you couldn't have put

22  them on the floor?

23      A.  They're important documents.

24      Q.  Any reason why you couldn't have put

1   them in another room?

2       A.  Yes.  Confidential.

3       Q.  What is that reason?

4       A.  They're confidential settlement

5   documents.

6       Q.  Couldn't put them in an envelope, ask

7   your family members not to look at them?

8       A.  I could, but --

9       Q.  Okay.  You don't trust your family

10  members to abide by that?

11      A.  I do.

12          MR. BESSER:  Objection.

13      Q.  You do trust them to abide by that?

14      A.  Yes.

15      Q.  Why couldn't you take the test in some

16  other location within your house?

17      A.  Because there are no suitable testing

18  environments besides my bedroom.

19      Q.  What do you mean by "suitable testing

20  environments"?

21      A.  I have to meet the requirements of

22  issued policies and that allow me to test

23  distraction-free.

24          MR. MARTI:  Okay.  I'm sorry.  Is it

Aaron Ogletree
September 03, 2021

Page 23

1   possible to read that back?  I think I lost some

2   of that transmission -- the answer back.

3          (Record read as requested.)

4   BY MR. MARTI:

5      Q.  So what issued policies are you talking

6   about?

7      A.  I was referring to the general testing

8   policies.  I don't remember the specific policy.

9      Q.  So did CSU dictate where you would take

10   the test?

11     A.  No.

12     Q.  Okay.  So I guess I'm confused about

13   these policies that you're referencing.

14     A.  I can't remember where they were from at

15   the time, but...

16     Q.  So you've seen the video of the -- in

17   the case that we produced, haven't you?

18     A.  I have not.

19     Q.  You've not reviewed that?

20     A.  No.

21     Q.  Do you know whether the proctor saw the

22   documents that you're referencing here?

23     A.  I can't state whether they did or not.

24     Q.  Do you know whether the other students

1   saw the documents you're referencing here?

2       A.  I can't state whether they did or not.

3       Q.  Okay.  Did you make any effort to cover

4   or obscure those documents at all?

5       A.  I did.

6       Q.  Okay.  Is there a reason why you

7   couldn't have simply just put them upside down?

8       A.  I tried that as well, but you could see

9   through the papers.

10      Q.  I'm sorry.  Say that again, please.

11      A.  You could see through the paper.

12      Q.  Were they onion skin paper or something

13  like that?

14      A.  It was very thin paper.

15      Q.  The email we just looked at, Exhibit E,

16  indicates that the test is going to be around

17  12:30, 12:45.  Did it happen about that time?

18      A.  I don't remember exactly when.

19      Q.  In that ballpark?

20      A.  Sounds about right.

21      Q.  Okay.  Did anyone from CSU physically

22  enter your house to proctor you?

23      A.  No.

24      Q.  Would CSU have been able to see your

Page 25

1   surroundings if you hadn't moved your computer

2   around?

3       A.  No.

4       Q.  Okay.  Could you see the other students

5   while you were taking the test?

6       A.  Yes.

7       Q.  All the time, or when?

8       A.  Any time that I wasn't focusing on my

9   test.

10      Q.  How long did it take you to do the room

11  scan that they asked for?

12      A.  I don't remember exactly.

13      Q.  Well, other witnesses have testified it

14  was, you know, maybe 20 seconds.  Does that

15  sound about right?

16      A.  Yeah, that sounds approximately correct.

17      Q.  Okay.  So who was home at the time you

18  took the test?

19      A.  My mother, my brother, and my younger

20  sister.

21      Q.  So there's a total of four people there?

22      A.  Yes.

23      Q.  So if we could, let's go back to Exhibit

24  A again, please.  Are you ready?

1      A.  Yes.

2      Q.  So this document indicates that the

3    house has a basement of 1041 square feet.  Does

4    that sound about right, full basement?

5      A.  I'm not sure of the exact measurements,

6    but I assume whoever measured --

7      Q.  Okay.  So was it a finished basement?

8      A.  No.

9      Q.  So let's go to Exhibit F, please.

10                    -=0=-

11         (Deposition Exhibit F marked.)

12                    -=0=-

13      A.  Okay.

14   BY MR. MARTI:

15      Q.  So this is an email you sent to Kelly

16   King about 1:44 on February 17, 2021; is that

17   correct?

18      A.  That appears to be correct.

19      Q.  Do you have any reason to doubt the

20   authenticity of this email?

21      A.  I do not.

22      Q.  So how long did it take you to complete

23   the test?

24      A.  I don't remember exactly.

1      Q.  Can you give me a ballpark?

2      A.  Approximately 40, 45 minutes.

3      Q.  Okay.  So if you start the test about

4  12:30, say it's a 45-minute test, you're done a

5  quarter after 1:00.  Does that sound about

6  right?

7      A.  Yeah.

8      Q.  So this email was sent about a half hour

9  later, after that.  Does that sound about right?

10     A.  That sounds about right.

11     Q.  Okay.  Let's go into the second

12  paragraph, and could you read the second

13  sentence of that paragraph into the record,

14  please?

15     A.  Yes.  While I managed to selectively

16  move the camera to limit injuries, one 1099 form

17  bearing my name, SSN, settlement value, and

18  entity which paid the settlement and its TIN

19  became exposed as my elbow brushed the covering

20  papers while panning my laptop around.

21     Q.  So what do you mean by selectively

22  moving the camera?

23     A.  I attempted to move the camera only to

24  display what was meant to be in the view.

```
 1       Q.  Did anybody from CSU push back about the
 2  scope of your scan?
 3       A.  I don't recall.  I do remember having to
 4  stop a second longer on my loose leaf paper, I
 5  believe.
 6       Q.  I'm sorry, say that last part again,
 7  please.
 8       A.  The loose leaf paper.
 9       Q.  The papers for the exam?
10       A.  That and the scratch paper to do my
11  calculations.
12       Q.  Okay.  Very good.
13           So the proctor indicated that she saw no
14  tax documents, anything like that.  Do you have
15  any ability to dispute her testimony on that
16  point?
17       A.  I don't believe so.  Not at the moment.
18       Q.  Okay.  So if we could go down two more
19  sentences to the sentence that says,
20  "Additionally, the search disclosed."  Do you
21  see where I am?
22       A.  Yes.
23       Q.  Can you read that sentence into the
24  record for us.
```

1     A.  Additionally, the search disclosed other

2  personal and private information such as

3  potentially the names and amounts of medications

4  which I take regularly which are placed on my

5  nightstand nearby my desk.

6     Q.  Okay.  Thank you.

7         So were those medications there at the

8  time that you received the email we looked at as

9  Exhibit E?

10    A.  Yes.

11    Q.  Okay.  Any reason why you couldn't have

12  moved them in the hour and a half between

13  Exhibit E and when the test started?

14    A.  No.

15    Q.  Okay.  The proctor who took the test

16  indicated that she didn't see any medications.

17  Do you have any ability to dispute her testimony

18  on that point?

19    A.  I don't believe so.

20    Q.  How do you know that the other students

21  saw either the tax documents or the medications

22  you reference here?

23    A.  I do not.

24    Q.  Let's go to Exhibit G, please.

1                        -=0=-

2              (Deposition Exhibit G marked.)

3                        -=0=-

4    BY MR. MARTI:

5        Q.  This is a multipage email string, so you

6    might want to start at the bottom and work your

7    way forward.

8        A.  Okay.

9        Q.  So this appears to be an email chain

10   between you and Testing Services on the

11   afternoon into the early evening of February

12   17th.  Do you have any reason to doubt that?

13       A.  It appears to be so.  It appears to be

14   incomplete.

15       Q.  How so?

16       A.  The random closing at the top of this

17   document, which I don't remember.

18       Q.  You're talking about the line above the

19   first page, top of the first page?

20       A.  I'm talking about Best Regards,

21   Cleveland State University Testing Services.

22       Q.  Okay.  So as to the portion that is

23   there, do you have any reason to doubt its

24   authenticity?

1        A.  I do not.

2        Q.  Okay.  So let's go to -- do you have any

3   reason to doubt that these exchanges occurred at

4   about the times that are mentioned in these

5   emails?

6        A.  That appears approximately correct.

7        Q.  Okay.  Very good.

8            So let's go to page 2 of this email.

9   It's an email from Testing Services to you at

10  5:56 p.m.  Do you see where I am?

11       A.  Yes, I do.

12       Q.  Okay.  Could you read the second full

13  paragraph of that email into the record, please?

14       A.  Sure.  The cursory review of your

15  immediate testing space is a Testing Services

16  process, not a University or instructor specific

17  policy.  This is done to confirm that only

18  permitted materials are present before the start

19  of the exam.  All students, regardless of the

20  course or instructor, are asked to do this as

21  part of the check-in process.  If you have

22  further questions regarding this, please feel

23  free to reach out to me at any time.

24       Q.  Do you have any reason to dispute what's

Page 32

1   said there?

2      A.  Yes.

3      Q.  Okay.  Explain that for us.

4      A.  The director of Testing Services had

5   contradicting information.

6      Q.  Can you elaborate, please?

7      A.  I'm not sure exactly how.

8      Q.  Well, you mentioned contradicting

9   information.  What was that contradicting

10  information?

11     A.  Okay.  Specifically the very first

12  sentence, the cursory review of your immediate

13  testing space is a Testing Services process, not

14  a University or instructor specific policy.

15     Q.  Okay.  And what contradicted that?

16     A.  She made a statement saying that it was

17  a required University policy.  I don't remember

18  exactly what it was.

19     Q.  Did you have a face-to-face conversation

20  with her or something like that?

21     A.  I don't believe this was a face-to-face

22  conversation.

23     Q.  Do you know when it would have occurred?

24     A.  I don't remember.

Page 33

```
 1       Q.  Okay.  Do you have any -- was it a
 2   telephone conversation?
 3       A.  No.
 4       Q.  Email, text?  How was it communicated?
 5       A.  I believe email.  I'm not 100 percent
 6   sure on that.
 7       Q.  Okay.  Let's go to Exhibit H.
 8                     -=0=-
 9          (Deposition Exhibit H marked.)
10                     -=0=-
11       A.  I do not see Exhibit H.
12          MR. MARTI:  I'm sorry.  I sent it
13   earlier this morning.  I apologize.  I think it
14   was around 8:30 this morning.  I apologize.
15          MR. BESSER:  Hold on.  I do have it.
16   BY MR. MARTI:
17       Q.  Do you have it, Aaron?
18          MR. BESSER:  I haven't sent it yet.
19   Hold on.  I'm sending it.
20          Okay.  I just sent it.
21          THE WITNESS:  I haven't received it yet.
22          MR. BESSER:  Give it a sec.
23          THE WITNESS:  And there it is.
24          MR. MARTI:  Great.
```

 1           THE WITNESS:  Okay.

 2    BY MR. MARTI:

 3       Q.  Okay.  So at least the first page,

 4    carrying over on to page 2, is an email from you

 5    to Kelly King on February 24th; is that correct?

 6       A.  That appears approximately correct.  I

 7    don't recall exactly when I sent it.

 8       Q.  Okay.  Do you have any reason to doubt

 9    the authenticity of this document?

10       A.  I do not.

11       Q.  Okay.  Thank you.

12           Okay.  Let's go to Exhibit I, please.

13                      -=0=-

14         (Deposition Exhibit I marked.)

15                      -=0=-

16       A.  Okay.

17    BY MR. MARTI:

18       Q.  Okay.  So this seems to be an email that

19    you sent to various folks at CSU on February 28,

20    2021.  Do you have any reason to dispute the

21    authenticity of this email?

22       A.  I do not.

23       Q.  Okay.  So let's go to Exhibit J.

24                      -=0=-

1           (Deposition Exhibit J marked.)

2                        -=0=-

3      A.  Okay.

4  BY MR. MARTI:

5      Q.  Are you ready to talk about this, or do

6  you need some time to review?

7      A.  I think I remember it.

8      Q.  Okay.  Fair enough.

9           So you filed this document to start this

10  lawsuit; is that correct?

11     A.  That is correct.

12     Q.  Okay.  And I think you filed under oath.

13  Yeah, it's a verified complaint.  Do you stand

14  by the factual assertions you made in this

15  document?

16     A.  I think there was one thing, but I don't

17  remember what it was, but yes, I stand by the

18  vast majority of it.

19     Q.  Okay.  And can you think of anything in

20  particular that you don't stand by?

21     A.  I think it was more of a -- I don't

22  remember exactly what it was, but I think it was

23  something related to knowing that the documents

24  were seen.

Page 36

 1      Q.  I'm sorry.  I didn't catch that.  What's

 2   that last thing you said?

 3      A.  I believe it was -- I'll just real quick

 4   review it.

 5      Q.  Sure.

 6      A.  That was it.

 7      Q.  Okay.

 8      A.  I do not stand by paragraph 40,

 9   defendants were fully aware of plaintiff's

10   intention to refuse any searches.  I can't

11   testify as to what they were aware of.

12      Q.  All right.  Fair enough.  Let's go back

13   a couple pages, page 8 of this document.  And

14   more specifically paragraph 59.

15      A.  What about that paragraph?

16      Q.  Can you read that for us, please?

17      A.  Defendants did not limit their search to

18   a scope which was reasonable given their

19   suspicions and information.

20      Q.  So what would have been reasonable?

21          MR. BESSER:  Objection.  That calls for

22   a legal conclusion.

23      A.  I cannot answer this because I'm not an

24   attorney.

1      Q.  Well, you wrote this, didn't you?

2      A.  I did.

3      Q.  So what did you mean when you wrote it?

4          MR. BESSER:  Objection.

5          You can answer that.

6      A.  I don't recall what the meaning was

7   specifically behind this as I wrote it.

8      Q.  So you can't tell us what would have

9   been a reasonable approach to this problem,

10  then?

11         MR. BESSER:  Objection.  Legal

12  conclusion.

13     A.  Yes.

14     Q.  Can you or can't you?

15     A.  I cannot answer that question.  I'm not

16  an attorney.

17     Q.  Okay.  Let's go to Exhibit K.

18                    -=0=-

19        (Deposition Exhibit K marked.)

20                    -=0=-

21         MR. BESSER:  Aaron, do you need time to

22  take a break to read that through?

23         THE WITNESS:  No.  I'm almost done.

24         Okay.

 1  BY MR. MARTI:

 2      Q.  Okay.  So Exhibit K, this is your motion

 3  for preliminary injunction; is that correct?

 4      A.  That is correct.

 5      Q.  And you wrote this document; that's

 6  correct?

 7      A.  Yes.

 8      Q.  And you filed it with the court; that's

 9  correct?

10      A.  That is correct.

11      Q.  So you stand by it?

12      A.  Yes.

13      Q.  Okay.  So let's go to page 7.  I'm

14  sorry, page 11.  I apologize.  Actually, I'm

15  sorry.  Let's go to 7, actually, instead.

16      A.  Okay.  I'm at page 7.

17      Q.  Okay.  Do you see the sentence that

18  begins at line 152 and goes over to 155?

19      A.  I do.

20      Q.  Can you read that for us, please?

21      A.  Yes.  Plaintiff contends that he

22  possesses a reasonable expectation of privacy in

23  all of these areas as he took normal precautions

24  to maintain his privacy by ensuring that the

```
 1   camera on his laptop was oriented in such a way

 2   as to only reveal his upper torso and face and

 3   nothing else to the school officials and

 4   students in the Zoom meeting.

 5        Q.  So you stand by that statement, correct?

 6        A.  I do.

 7        Q.  Okay.  And let's go further down the

 8   page and the sentence that starts on line 162,

 9   goes through 164.  Can you read that for us,

10   please?

11        A.  Yes.  Turning to the second essential

12   element for this Court to determine, plaintiff

13   would like to recognize the defendants'

14   legitimate interest in fulfilling its

15   governmental function of providing higher

16   education while ensuring academic integrity.

17        Q.  Do you still stand by that statement?

18        A.  Yes.

19        Q.  Let's go to page 11 now.

20        A.  Okay.

21        Q.  And do you see the sentence that starts

22   on line 244?

23        A.  Yes.

24        Q.  Can you read that for us, please?
```

1       A.  Finally, because the University

2  possesses other measures with which it can

3  preserve academic integrity, the searches

4  conducted by defendants go completely awry of

5  the purpose of the TLO reasonability test as the

6  interests of the students are invaded far more

7  than is necessary for the defendants to preserve

8  the academic integrity in the University.

9       Q.  So what were the other measures that you

10  were referring to here?

11      A.  I'm sorry, what was that?

12      Q.  What were the other measures that you

13  were referring to in this sentence?

14      A.  I don't recall exactly which ones they

15  were, but I did have a conversation with the

16  director of Testing Services.

17      Q.  Can you describe that for us, please?

18      A.  I don't recall.

19      Q.  Well, I don't mean to be difficult, but

20  you filed a document with the Federal Court.

21  You vouched for its accuracy.  So what are the

22  other measures that you referenced in that

23  document?

24          MR. BESSER:  Objection.  Asked and

1   answered.

2      A.  What?

3         MR. BESSER:  Objection.  Asked and

4   answered.

5      Q.  You're still obligated to answer,

6   though.

7      A.  I do not recall.

8      Q.  Okay.  Well, aside from what you wrote

9   here, what other measures can you tell us now

10  that would accomplish the same results?

11     A.  At the moment, I don't recall.

12     Q.  Okay.  So my recollection from these

13  emails and correspondence between you and CSU is

14  you put a fair amount of time preparing this

15  case; is that correct?

16     A.  Yes.

17     Q.  So you thought about it before you filed

18  it?

19     A.  Yes.

20     Q.  And you still can't tell us what the

21  other measures are?

22     A.  There's been quite a few intervening

23  circumstances in between.  I don't recall all.

24     Q.  Well, regardless of what you were

Page 42

1    referring to then, you've thought about the case

2    even more since then.  What other measures would

3    you suggest?

4        A.  I'm not sure I'm prepared to answer that

5    at the moment.  I would have to think about that

6    thoroughly.

7        Q.  Well, we've had -- this case has been

8    going on since February, March, six, eight

9    months.  You've had plenty of time to think

10   about it.  Sounds like you can't come up with

11   any measures; is that a fair statement?

12           MR. BESSER:  Objection.

13       A.  That is not.

14       Q.  I'm sorry?

15       A.  No.

16       Q.  No what?  No, you can't come up with any

17   other measures?

18       A.  I wouldn't say that.

19       Q.  Then tell us what those measures are.

20       A.  I would need more time to prepare.

21       Q.  All right.  So we had two other

22   witnesses who testified in this case and they

23   indicated that, based on their professional

24   experience, they couldn't think of any other

Page 43

1    ways to accomplish the goals the search is

2    intended to provide.

3           MR. BESSER:  Objection.  Objection.

4           MR. MARTI:  All right.  You can make

5    your objection.

6       Q.  What other -- are you in a position to

7    refute their testimony?

8           MR. BESSER:  Assumes facts not in

9    evidence.

10      Q.  Do you want to answer the question?

11      A.  I do not.

12      Q.  You do not --

13      A.  I do not wish to answer.

14      Q.  Well, that's not an option, sir.

15      A.  Okay.  I was just answering the other

16   question.

17          I don't believe so, not at this time.

18      Q.  Okay.  Let's go to page 13 of this

19   document, Exhibit K.

20      A.  Okay.

21      Q.  Do you see the sentence that begins --

22   do you see the paragraph that begins at line

23   288, goes down to 295?

24      A.  Yes, I do.

Aaron Ogletree
September 03, 2021

Page 44

1        Q.  Can you read that for us, please?

2        A.  Sure.  Granting the temporary

3   preliminary injunction requested by plaintiff

4   will not harm others because, as mentioned in

5   detail above, defendants possess numerous

6   alternative options that will allow it to

7   continue to fulfill its legitimate government

8   function of providing higher education services

9   while still maintaining academic integrity for

10  the examinations that are administered remotely.

11  Because all the above options are sufficient for

12  defendant's purposes, any alleged harm does not

13  justify defendants' complete and total disregard

14  for students' Fourth Amendment rights.  Granting

15  plaintiff's motion serves the interest of the

16  public as it ensures defendants can continue to

17  provide educational services while protecting

18  Fourth Amendment rights of the students until

19  trial can be held.

20       Q.  So what were these options that you're

21  referencing here?

22       A.  I don't recall where they are above.  I

23  can go back and check.

24       Q.  That's fine.  Do you want to take a

Page 45

 1    break so you have time to go through the

 2    document, or do you want to do it on the record?

 3        A.  On the record is fine.

 4            MR. BESSER:  Let's take a bathroom

 5    break.

 6            MR. MARTI:  That's fine.  It's 11:06.

 7    Do you want to say 11:20?

 8            THE WITNESS:  Sounds good to me.

 9            MR. MARTI:  Does that work for you,

10    Matt?

11            MR. BESSER:  Yes.  Thank you.

12            (Recess.)

13    BY MR. MARTI:

14        Q.  We took a little break there,

15    Mr. Ogletree.  My recollection is that during

16    the break you were going to review Exhibit K so

17    that you could tell us what the options were

18    that you reference of page 13 of that document.

19    I believe at the time I was referencing the

20    statement made on lines 171 through 176 of page

21    8.  Let me get there.  What lines were you

22    referring to?

23        A.  171 through 176.

24        Q.  Why don't you read those for us.

Page 46

```
 1      A.  One moment.

 2          The students can continue to monitor

 3  students taking their examinations remotely

 4  through their webcams to the extent that

 5  students consent to defendants viewing to

 6  dissuade cheating and, should suspicious

 7  behavior be detected, a search can be conducted

 8  to investigate when reasonable suspicion and

 9  evidence is articulated.  Further, defendants

10  can retroactively determine if cheating has

11  occurred through many avenues, one of which

12  being the electronic data collected by security

13  measures on the examination provider,

14  Blackboard.

15      Q.  So what's the electronic data that you

16  reference in line 175?

17      A.  I don't recall exactly.

18      Q.  Okay.  And what are the security

19  measures that you reference on line 176?

20      A.  I don't recall all of them.

21      Q.  Okay.  So if I'm reading lines 171

22  through 17 -- the sentence that starts on 171

23  and goes through 174, am I correct in

24  understanding that you're saying that the
```

 1   University meets solely through consensual

 2   scans?

 3       A.  That wasn't exactly what I intended at

 4   the time.

 5       Q.  Okay.  Well, I don't want to put words

 6   in your mouth, so why don't you tell us.

 7       A.  I meant like once a laptop is placed,

 8   the webcam is facing how mine is currently, only

 9   upper torso showing, nothing else.  So that

10   would be what an individual consented to showing

11   what they placed in the view of the camera.

12       Q.  Okay.  So you're looking at me on Zoom.

13   I'm looking at you.  We both have upper torso

14   shots.

15       A.  Yes.

16       Q.  I have a big pile of notes here that I'm

17   working from.  You can't see those, can you?

18       A.  I cannot.

19       Q.  All right.  Okay.  Very good.

20           (Pause.)

21   BY MR. MARTI:

22       Q.  So, Mr. Ogletree, continuing with our

23   discussion of what you can and can't see in

24   Zoom, through Zoom.  Can you tell if there's

Page 48

1    anybody else in the room with me here?

2        A.  I cannot.

3        Q.  Okay.  And let's go to Exhibit L, as in

4    Larry.

5                          -=0=-

6            (Deposition Exhibit L marked.)

7                          -=0=-

8        A.  Okay.

9    BY MR. MARTI:

10       Q.  Okay.  So this is an affidavit you filed

11   with the court in this case?

12       A.  That is correct.

13       Q.  And it appears to be a true and accurate

14   copy of it?

15       A.  I believe so.

16       Q.  Okay.  Can you go to page 2, paragraph

17   4, and read that into the record for us, please?

18       A.  Yes.  Based upon my conversations with

19   the director of Testing Services at Cleveland

20   State University during my disability

21   accommodations assessment, defendants possess

22   security measures in addition to the search

23   policy that will permit Cleveland State

24   University to maintain academic integrity and

Page 49

1    continuity of governmental services even if the

2    search policy were removed.

3        Q.  So when did you have this conversation

4    with the director of Testing Services?

5        A.  I don't recall exactly when that

6    occurred.

7        Q.  So it must have been sometime before you

8    filed this affidavit on March 18th --

9        A.  Yes.

10       Q.   -- can we agree on that?

11       A.  It was.

12       Q.  Okay.  How long did that conversation

13   last?

14       A.  I don't recall exactly.  Maybe half

15   hour, 45 minutes.

16       Q.  And how was that conversation conducted?

17       A.  Through Zoom.

18       Q.  Through Zoom.  Okay.  So what are these

19   security measures in addition to the search

20   policy that you're referencing?

21       A.  I don't recall what she stated.  It was

22   something along the lines of she could disable

23   additional security measures in Blackboard as an

24   accommodation if that was necessary.

Page 50

```
 1        Q.  Okay.  Just to be clear, I've asked you
 2   a number of times what the other measures were,
 3   and the only thing that you were able to
 4   identify were the pages -- the documents on line
 5   174 and immediately following Exhibit K.  Can
 6   you think of any others?
 7        A.  I can't, but --
 8        Q.  Please do.
 9        A.  I'm sorry, what was that?
10        Q.  Please do.  This is your chance to tell
11   us how it should be done differently.
12            MR. BESSER:  Objection.  That's not
13   accurate.
14            You can answer if you can, Aaron.
15        A.  I don't believe this is the appropriate
16   time right now --
17            MR. BESSER:  Don't -- just answer the
18   question if you can.
19        A.  Okay.  Could you repeat the question?
20        Q.  Yeah.  So I've asked you a number of
21   times what the alternatives would be to this
22   room scan policy.  And the only thing that
23   you've been specifically identifying is the
24   materials at lines 171 and following in Exhibit
```

Page 51

1   K.  Can you think of any other alternatives?

2       A.  Yes.

3       Q.  What are they?

4       A.  At the moment, I cannot elaborate on

5   them.

6       Q.  Okay.  I think we beat this one to death

7   here.

8           Let's talk a little bit about what

9   you're doing this semester.  You're still

10  enrolled in Cleveland State?

11      A.  Yes.

12      Q.  Taking a full load?

13      A.  Yes.

14      Q.  Okay.  Are your classes in person or

15  online?

16      A.  In person.

17      Q.  I'm sorry?

18      A.  In person.

19      Q.  Oh, you're lucky.

20          Will your examinations be in person or

21  online?

22      A.  That's to be determined.

23      Q.  What do you mean?

24      A.  I had a doctor fill out a form for

1  additional accommodations.

2      Q.  So you've asked to have them online; is

3  that what you're saying?

4      A.  I haven't yet.

5      Q.  Is that your desire, though?  Is that

6  what you would prefer?

7      A.  Depending on the pandemic, with my

8  health issues, family health issues, it may be

9  best.

10     Q.  Okay.  Have you had any other proctored

11  exams at CSU other than the one we're litigating

12  here today?

13     A.  I don't believe so.

14         MR. MARTI:  Let's take a five-minute

15  break.  Let me speak with my co-counsel.  I

16  think we may be done, though.  Let's reconvene

17  at 11:35.  Does that work for everybody?

18         THE WITNESS:  Yes.

19         MR. MARTI:  Okay.  Thank you.

20         (Recess.)

21         MR. MARTI:  That's all we have now,

22  unless Matt's got some questions.

23         MR. BESSER:  I don't.  We will read.

24         MR. MARTI:  We need a copy of it.

```
 1                        -=O=-

 2          Thereupon, the testimony of September

 3   3, 2021, was concluded at 11:37 a.m.

 4                      -=O=-

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

Page 54

1                          CERTIFICATE

2    STATE OF OHIO      :
                              SS:
3    COUNTY OF FRANKLIN :

4           I, Rhonda Lawrence, a stenographic
     court reporter and notary public in and for the
5    State of Ohio, duly commissioned and qualified,
     do hereby certify that the within-named AARON M.
6    OGLETREE was first duly sworn to testify to the
     truth, the whole truth, and nothing but the
7    truth in the cause aforesaid; that the testimony
     then given was taken down by me stenographically
8    in the presence of said witness, afterwards
     transcribed; that the foregoing is a true and
9    correct transcript of the testimony; that this
     deposition was taken at the time and place in
10   the foregoing caption specified.

11          I certify that I am not a relative or
     employee of any attorney or counsel employed by
12   the parties hereto and that I am not financially
     interested in the action.  I further certify
13   review of the transcript was requested.

14          In witness whereof, I have hereunto
     set my hand at Columbus, Ohio, on this 17th day
15   of September, 2021.

16

17

18

19

20
                    *Rhonda Lawrence*
21
                    Rhonda Lawrence
22                  Notary Public, State of Ohio

23   My commission expires:  October 9, 2023

24

Aaron Ogletree
September 03, 2021

**Exhibits**

**Exhibit 2**  13:6

**Exhibit A**  10:3,6
25:23,24

**Exhibit B**  12:6,8

**Exhibit C**  13:19,21

**Exhibit D**

**Exhibit E**  16:13,15
24:15 29:9,13

**Exhibit F**  26:9,11

**Exhibit G**  29:24 30:2

**Exhibit H**  33:7,9,11

**Exhibit I**  34:12,14

**Exhibit J**  34:23 35:1

**Exhibit K**  37:17,19
38:2 43:19 45:16 50:5,
24 51:1

**Exhibit L**  48:3,6

**Exhibit M**

**-**

**-=0=-**  10:5,7 12:7,9
13:20,22 16:14,16
26:10,12 30:1,3 33:8,
10 34:13,15,24 35:2
37:18,20 48:5,7

**-=O=-**  53:1,4

**1**

**1**  17:10

**100**  33:5

**1041**  26:3

**1099**  27:16

**1099s**  19:10

**10:25**  17:14

**10:40**  18:18

**11**  20:20,23 38:14
39:19

**11:06**  45:6

**11:20**  45:7

**11:35**  52:17

**11:37**  53:3

**12:30**  24:17 27:4

**12:45**  24:17

**13**  43:18 45:18

**1400**  10:18

**152**  38:18

**155**  38:18

**162**  39:8

**164**  39:9

**17**  16:23 17:15 26:16
46:22

**171**  45:20,23 46:21,22
50:24

**174**  46:23 50:5

**175**  46:16

**176**  45:20,23 46:19

**17th**  17:20,23 30:12

**18**  14:5 16:8

**18th**  49:8

**1:00**  27:5

**1:44**  26:16

**2**

**2**  13:6 31:8 34:4 48:16

**20**  25:14

**2021**  14:5 16:8,23
26:16 34:20 53:3

**244**  39:22

**24th**  34:5

**28**  34:19

**288**  43:23

**295**  43:23

**3**

**3**  53:3

**4**

**4**  48:17

**40**  27:2 36:8

**44134**  9:22

**45**  27:2 49:15

**45-minute**  27:4

**4822**  9:21

**5**

**59**  36:14

**5:56**  31:10

**7**

**7**  38:13,15,16

**8**

**8**  20:19,22 36:13 45:21

**8:30**  33:14

**A**

**a.m.**  17:14 18:19 53:3

**Aaron**  5:1 19:17 20:12
33:17 37:21 50:14

**abide**  19:18 22:10,13

**ability**  6:15 28:15
29:17

**academic**  39:16 40:3,
8 44:9 48:24

**Academy**  8:9

**accommodation**
49:24

**accommodations**
48:21 52:1

**accomplish**  5:17
41:10 43:1

**accuracy**  40:21

**accurate**  10:19 48:13
50:13

**actor**  7:10

**addition**  48:22 49:19

**additional**  49:23 52:1

**Additionally**  28:20
29:1

**address**  9:19

**administered**  44:10

**affidavit**  48:10 49:8

**afternoon**  30:11

**agree**  6:7,10 49:10

**ahead**  14:8

**alcohol**  6:13

**alleged**  44:12

**allowed**  18:7 20:2

**alternative**  44:6

**alternatives**  50:21
51:1

**Amendment**  44:14,18

**amount**  41:14

**amounts**  29:3

**and/or**  15:1

**answering**  43:15

**answers**  6:4

**apologize**  11:13
33:13,14 38:14

**appears**  14:4,7 16:22
26:18 30:9,13 31:6
34:6 48:13

**approach**  37:9

**approximately**  17:16
18:23 20:13 25:16
27:2 31:6 34:6

**area**  7:4 19:10 21:19

**areas**  38:23

**arriving**  19:10

**articulated**  46:9

**assertions**  35:14

**assessment**  48:21

**associate's**  8:16

Aaron Ogletree
September 03, 2021

assume 6:22 26:6

Assumes 43:8

attached 18:8

attempted 27:23

attended 8:9

attention 6:3

attorney 36:24 37:16

Auditor 10:14

authentic 14:12

authenticity 17:3 26:20 30:24 34:9,21

Avenue 9:21

avenues 46:11

aware 16:2 36:9,11

awry 40:4

**B**

back 23:1,2 25:23 28:1 36:12 44:23

background 8:7

backwards 17:9

ballpark 24:19 27:1

based 42:23 48:18

basement 26:3,4,7

bathroom 45:4

bearing 27:17

beat 51:6

bedroom 8:5 22:18

bedrooms 11:2,14

begins 19:5 38:18 43:21,22

behavior 46:7

BESSER 7:6,9 8:1 19:17 20:1,11 22:12 33:15,18,22 36:21 37:4,11,21 40:24 41:3 42:12 43:3,8 45:4,11 50:12,17 52:23

big 20:16,19,22 47:16

bigger 21:1

bit 7:2 51:8

Blackboard 46:14 49:23

blank 18:8

bone 7:2

bottom 17:9 30:6

bound 21:7

breach 19:12

breaching 20:2

break 8:12 37:22 45:1, 5,14,16 52:15

brother 11:20 25:19

brought 19:13

brushed 27:19

**C**

calculations 28:11

calculator 18:8

call 7:23

called 10:15

calls 36:21

camera 27:16,22,23 39:1 47:11

care 6:3

carrying 34:4

case 5:9,20 15:11 23:17 41:15 42:1,7,22 48:11

catch 36:1

certified 5:3

chain 30:9

chance 50:10

cheating 46:6,10

check 14:10 44:23

check-in 31:21

checking 18:5,12

chemistry 8:18 15:1

circumstances 41:23

claimed 14:24

claims 19:13

classes 51:14

clear 50:1

Cleveland 30:21 48:19,23 51:10

close 6:3

closing 30:16

co-counsel 52:15

collected 46:12

communicated 33:4

complaint 35:13

complete 6:23 26:22 44:13

completely 40:4

computer 25:1

concluded 53:3

conclusion 36:22 37:12

conducted 40:4 46:7 49:16

confidential 19:9,22 22:2,4

confidentiality 19:12

confirm 31:17

confused 23:12

consensual 47:1

consent 7:11 46:5

consented 47:10

constitute 16:1

contends 38:21

contention 7:2

continue 44:7,16 46:2

continuing 47:22

continuity 49:1

contracts 19:19

contradicted 32:15

contradicting 32:5,8, 9

conversation 32:19, 22 33:2 40:15 49:3,12, 16

conversations 48:18

copy 14:13 48:14 52:24

correct 14:6,7 17:11, 12,15,16 18:1 25:16 26:17,18 31:6 34:5,6 35:10,11 38:3,4,6,9,10 39:5 41:15 46:23 48:12

correspondence 41:13

counsel 9:13

County 10:14,15

couple 36:13

court 5:14,21,23 6:1 7:23 11:8 38:8 39:12 40:20 48:11

cover 24:3

covering 27:19

criminal 8:15

CROSS-EXAMINATION 5:4

CSU 8:9,17 9:3 15:23 16:3 23:9 24:21,24 28:1 34:19 41:13 52:11

cursory 31:14 32:12

cut 14:9

Cuyahoga 10:14,15

**D**

data 46:12,15

date 7:24 14:11 17:20

day 11:19

dealing 12:23 13:2

death 51:6

defendant's 44:12

Aaron Ogletree
September 03, 2021

**defendants** 5:9 36:9, 17 40:4,7 44:5,16 46:5,9 48:21

**defendants'** 39:13 44:13

**Depending** 52:7

**deposes** 5:3

**deposition** 5:10,11 7:23 10:6 12:8 13:21 16:15 26:11 30:2 33:9 34:14 35:1 37:19 48:6

**describe** 9:5 40:17

**describing** 10:16

**desire** 52:5

**desk** 21:20 29:5

**detail** 44:5

**detected** 46:7

**determine** 39:12 46:10

**determined** 51:22

**devices** 7:13

**dictate** 23:9

**differently** 50:11

**difficult** 40:19

**director** 32:4 40:16 48:19 49:4

**disability** 48:20

**disable** 49:22

**disclose** 20:3

**disclosed** 28:20 29:1

**discussion** 47:23

**display** 27:24

**dispute** 16:8,24 17:2 28:15 29:17 31:24 34:20

**disregard** 44:13

**dissuade** 46:6

**distraction-free** 22:23

**doctor** 51:24

**document** 10:2,14 12:5,15 13:5,10,18 14:2 17:3 26:2 30:17 34:9 35:9,15 36:13 38:5 40:20,23 43:19 45:2,18

**documents** 19:9,15, 22,23 20:4 21:23 22:5 23:22 24:1,4 28:14 29:21 35:23 50:4

**dog** 7:17

**doubt** 26:19 30:12,23 31:3 34:8

**duly** 5:2

**E**

**earlier** 33:13

**early** 30:11

**Ed** 16:13

**education** 39:16 44:8

**educational** 8:7 44:17

**effort** 24:3

**elaborate** 32:6 51:4

**elbow** 27:19

**electronic** 46:12,15

**element** 39:12

**email** 14:4,13,16,18 16:7,22 17:8,10,13,18 18:3,11,18,22 19:3 24:15 26:15,20 27:8 29:8 30:5,9 31:8,9,13 33:4,5 34:4,18,21

**emails** 15:17,22 31:5 41:13

**enrolled** 51:10

**ensures** 44:16

**ensuring** 38:24 39:16

**enter** 24:22

**entity** 27:18

**envelope** 22:6

**environments** 22:18, 20

**essential** 39:11

**established** 16:7

**evening** 30:11

**evidence** 43:9 46:9

**exact** 26:5

**exam** 12:2,19,22 13:2, 3,15,16 15:2,8 16:1,5 28:9 31:19

**examination** 46:13

**examinations** 44:10 46:3 51:20

**exams** 52:11

**exchange** 16:22 17:11 18:18

**exchanges** 31:3

**exhibit** 10:3,6 12:6,8 13:6,19,21 16:12,13, 15 24:15 25:23 26:9, 11 29:9,13,24 30:2 33:7,9,11 34:12,14,23 35:1 37:17,19 38:2 43:19 45:16 48:3,6 50:5,24

**exhibits** 9:13

**expectation** 38:22

**experience** 42:24

**explain** 5:16 32:3

**exposed** 27:19

**extent** 19:20 46:4

**F**

**face** 39:2

**face-to-face** 5:8 32:19,21

**facing** 47:8

**facts** 5:20 43:8

**factual** 35:14

**fair** 6:23 13:4 35:8 36:12 41:14 42:11

**family** 22:7,9 52:8

**February** 16:23 17:15,20,23 26:16

30:11 34:5,19 42:8

**Federal** 40:20

**feel** 31:22

**feet** 10:18 26:3

**figure** 14:16

**figured** 18:15

**filed** 35:9,12 38:8 40:20 41:17 48:10 49:8

**fill** 51:24

**Finally** 19:6 40:1

**fine** 7:18 44:24 45:3,6

**finished** 26:7

**five-minute** 52:14

**floor** 21:22

**focusing** 25:8

**folks** 34:19

**form** 19:9 27:16 51:24

**formula** 18:9

**forward** 30:7

**Fourth** 44:14,18

**free** 31:23

**front** 6:1

**fulfill** 44:7

**fulfilling** 39:14

**full** 6:23 14:17 19:3 26:4 31:12 51:12

**fully** 36:9

**function** 39:15 44:8

**G**

**general** 23:7

**give** 20:15 27:1 33:22

**goals** 43:1

**good** 10:20 18:16 28:12 31:7 45:8 47:19

**government** 44:7

**governmental** 39:15 49:1

graduated 8:8

Granting 44:2,14

Great 16:11 19:1 33:24

guess 23:12

**H**

half 20:19,23 21:3 27:8 29:12 49:14

handy 9:16

happen 24:17

harm 44:4,12

head 11:11

health 52:8

hear 6:7

held 44:19

hereinafter 5:2

higher 39:15 44:8

Hold 19:17 33:15,19

home 12:1 25:17

hour 27:8 29:12 49:15

house 10:17 11:18 22:16 24:22 26:3

**I**

ID 18:6,12

identify 50:4

identifying 50:23

immediately 50:5

impair 6:14

important 6:2 21:23

included 19:12

incomplete 30:14

individual 47:10

influence 6:13

information 29:2 32:5,9,10 36:19

initially 8:15

injunction 38:3 44:3

injuries 27:16

instructor 14:23 31:16,20 32:14

integrity 15:24 16:4 39:16 40:3,8 44:9 48:24

intended 43:2 47:3

intention 36:10

interest 15:24 16:4 39:14 44:15

interests 40:6

interrupt 7:22

intervening 41:22

invaded 40:6

investigate 46:8

involved 9:10

issue 15:10

issued 22:22 23:5

issues 21:17 52:8

**J**

January 14:5 16:8

judge 6:1

jury 6:1

justice 8:15

justify 44:13

**K**

Kelly 14:5 16:23 26:15 34:5

King 14:5 16:23 26:16 34:5

knowing 35:23

**L**

laptop 7:4 27:20 39:1 47:7

Larry 48:4

late 19:10

lawsuit 35:10

leaf 28:4,8

legal 20:16 36:22 37:11

legitimate 15:23 16:4 39:14 44:7

limit 27:16 36:17

lines 45:20,21 46:21 49:22 50:24

litigating 9:2,24 52:11

live 10:17

load 51:12

location 9:23 22:16

long 8:11 10:10 25:10 26:22 49:12

longer 28:4

looked 24:15 29:8

loose 21:8,9 28:4,8

lost 23:1

lucky 51:19

**M**

made 32:16 35:14 45:20

maintain 38:24 48:24

maintaining 44:9

majority 35:18

make 24:3 43:4

managed 27:15

March 42:8 49:8

marked 10:3,6 12:5,8 13:5,19,21 16:15 26:11 30:2 33:9 34:14 35:1 37:19 48:6

Marti 5:5,6 7:7,14,21 8:2 10:8 12:10 14:1 16:18 22:24 23:4 26:14 30:4 33:12,16, 24 34:2,17 35:4 38:1 43:4 45:6,9,13 47:21 48:9 52:14,19,21,24

materials 7:19 18:6 31:18 50:24

Matt 45:10

Matt's 52:22

meaning 37:6

meant 11:10 27:24 47:7

measured 26:6

measurements 10:21 26:5

measures 40:2,9,12, 22 41:9,21 42:2,11,17, 19 46:13,19 48:22 49:19,23 50:2

medications 6:14 29:3,7,16,21

meet 22:21

meeting 39:4

meets 47:1

members 22:7,10

mentioned 15:17,22 31:4 32:8 44:4

met 5:8

metric 10:22

mine 47:8

minutes 27:2 49:15

moment 10:9 28:17 41:11 42:5 46:1 51:4

monitor 46:2

months 42:9

morning 9:12 33:13, 14

mother 11:20,22 25:19

motion 38:2 44:15

mouth 47:6

move 21:15 27:16,23

moved 25:1 29:12

moving 27:22

multipage 30:5

Aaron Ogletree
September 03, 2021

**N**

names 29:3

nearby 29:5

nightstand 29:5

Nods 11:6 13:17

nonprogrammable 18:7

normal 38:23

note 7:21 19:7,8

notes 47:16

number 50:2,20

numerous 44:5

**O**

oath 35:12

objection 7:22 22:12 36:21 37:4,11 40:24 41:3 42:12 43:3,5 50:12

obligated 41:5

obscure 24:4

occurred 31:3 32:23 46:11 49:6

office 11:5

officials 39:3

Ogletree 5:1,6 7:1,16 8:3,4 9:20 45:15 47:22

Ohio 8:8 9:21

one's 11:4

onion 24:12

online 9:1 51:15,21 52:2

option 43:14

options 44:6,11,20 45:17

oriented 39:1

**P**

p.m. 31:10

pad 20:16

pages 20:4 36:13 50:4

paid 27:18

painting 21:18

pandemic 52:7

panning 27:20

paper 18:8 20:20,23 24:11,12,14 28:4,8,10

papers 24:9 27:20 28:9

paragraph 19:3 27:12,13 31:13 36:8, 14,15 43:22 48:16

Parma 9:21

part 7:3 17:10 18:17 28:6 31:21

Pause 47:20

paying 6:2

people 12:1 25:21

percent 33:5

permit 48:23

permitted 20:3 31:18

person 51:14,16,18, 20

personal 29:2

phone 5:7

physically 8:4 24:21

piece 20:20

pile 21:13 47:16

piled 21:11,12

pin 5:19

plaintiff 38:21 39:12 44:3

plaintiff's 13:6 36:9 44:15

plenty 42:9

point 28:16 29:18

policies 22:22 23:5,8, 13

policy 14:19,23 15:6 18:15 23:8 31:17 32:14,17 48:23 49:2, 20 50:22

portion 30:22

position 43:6

possess 44:5 48:21

possesses 38:22 40:2

potentially 21:6 29:3

precautions 38:23

prefer 52:6

preliminary 38:3 44:3

prepare 42:20

prepared 42:4

preparing 41:14

present 7:15 31:18

presently 8:10

preserve 40:3,7

preserving 15:24 16:4

previous 15:17,22

previously 19:19

prior 12:19

privacy 38:22,24

private 15:2 29:2

problem 37:9

procedure 7:3,8

process 21:18 31:16, 21 32:13

proctor 23:21 24:22 28:13 29:15

proctored 9:6,8,9 52:10

proctoring 9:7

proctors 15:2

produced 23:17

professional 42:23

professor 15:7

program 8:19

property 10:16

protected 15:2

protecting 44:17

provide 43:2 44:17

provider 46:13

providing 39:15 44:8

public 44:16

pull 13:6

purpose 5:19 11:16 40:5

purposes 11:5 44:12

push 28:1

put 21:21,24 22:6 24:7 41:14 47:5

**Q**

quarter 21:5 27:5

question 6:6,9,10,21 11:19 17:21,23 20:10 37:15 43:10,16 50:18, 19

questions 5:22 31:22 52:22

quick 36:3

**R**

raise 7:24

random 30:16

reach 31:23

read 14:21 15:20 17:9 18:2 19:4 23:1,3 27:12 28:23 31:12 36:16 37:22 38:20 39:9,24 44:1 45:24 48:17 52:23

reading 46:21

ready 10:11 12:12 13:8 16:20 25:24 35:5

Aaron Ogletree
September 03, 2021

**real** 36:3

**ream** 20:22

**reason** 6:17 16:24
17:2 21:21,24 22:3
24:6 26:19 29:11
30:12,23 31:3,24 34:8,
20

**reasonability** 40:5

**reasonable** 16:1
36:18,20 37:9 38:22
46:8

**recall** 28:3 34:7 37:6
40:14,18 41:7,11,23
44:22 46:17,20 49:5,
14,21

**receive** 9:14

**received** 17:13,18
29:8 33:21

**Recess** 45:12 52:20

**recognize** 16:3 39:13

**recollection** 41:12
45:15

**reconvene** 52:16

**record** 11:11 14:22
18:3 19:4 23:3 27:13
28:24 31:13 45:2,3
48:17

**records** 14:10

**reference** 29:22 45:18
46:16,19

**referenced** 40:22

**referencing** 23:13,22
24:1 44:21 45:19
49:20

**referring** 15:4,6 18:11
19:5,15 23:7 40:10,13
42:1 45:22

**refuse** 36:10

**refute** 43:7

**regularly** 29:4

**related** 35:23

**relevant** 5:20

**remember** 12:21
20:6,8 23:8,14 24:18

25:12 26:24 28:3
30:17 32:17,24 35:7,
17,22

**remotely** 44:10 46:3

**removed** 49:2

**repeat** 50:19

**reporter** 5:21,23 11:8

**represent** 5:8 10:13

**requested** 23:3 44:3

**required** 32:17

**requirements** 22:21

**reserve** 7:23

**resided** 11:18

**residential** 9:19

**results** 41:10

**retroactively** 46:10

**reveal** 39:2

**review** 31:14 32:12
35:6 36:4 45:16

**reviewed** 23:19

**rights** 44:14,18

**room** 7:12,13,17 18:15
21:19 22:1 25:10 48:1
50:22

**rooms** 10:23

**rules** 5:19 11:7

**Russell** 9:21

_____

**S**

**scan** 7:4 15:10 18:15
25:11 28:2 50:22

**scans** 47:2

**scattered** 19:10

**school** 39:3

**science** 8:16

**scope** 28:2 36:18

**scratch** 18:8 28:10

**search** 7:11 16:2
28:20 29:1 36:17 43:1
46:7 48:22 49:2,19

**searches** 36:10 40:3

**sec** 19:17 33:22

**second-to-the-last**
19:3

**seconds** 25:14

**section** 15:1

**secure** 19:11

**security** 46:12,18
48:22 49:19,23

**selectively** 27:15,21

**semester** 8:12,21
51:9

**semesters** 8:13

**sending** 33:19

**sentence** 14:18,21
15:14,15,16,20 18:3
27:13 28:19,23 32:12
38:17 39:8,21 40:13
43:21 46:22

**sentences** 14:17
15:14 28:19

**September** 53:2

**series** 5:22 9:13

**serves** 44:15

**services** 17:14 30:10,
21 31:9,15 32:4,13
40:16 44:8,17 48:19
49:1,4

**set** 5:18

**settlement** 19:9,23
22:4 27:17,18

**shaking** 11:10

**sheet** 18:9

**shots** 47:14

**show** 15:1,9

**showing** 47:9,10

**siblings** 11:23

**side** 19:7,8

**signed** 19:19

**similar** 18:14,15

**simply** 21:15 24:7

**single** 21:13

**sir** 43:14

**sister** 11:21 25:20

**sixth** 15:15

**skin** 24:12

**skip** 16:12

**solely** 47:1

**sophomore** 8:22

**sort** 17:8

**sound** 10:18,24 25:15
26:4 27:5,9

**sounds** 17:16 24:20
25:16 27:10 42:10
45:8

**space** 20:9,13 31:15
32:13

**spaces** 15:3

**speak** 52:15

**specific** 23:8 31:16
32:14

**specifically** 32:11
36:14 37:7 50:23

**spoke** 5:7

**spot** 21:20

**spread** 21:10

**square** 10:18 26:3

**SSN** 27:17

**stand** 35:13,17,20
36:8 38:11 39:5,17

**standard** 7:3,7

**start** 17:9 27:3 30:6
31:18 35:9

**started** 8:15 11:8
29:13

**starts** 14:18 15:16
39:8,21 46:22

**state** 7:10 23:23 24:2
30:21 48:20,23 51:10

**stated** 15:7 49:21

**statement** 32:16 39:5,
17 42:11 45:20

**states** 18:5

**stop** 28:4

**storage** 21:19

**strange** 20:10

**string** 30:5

**students** 14:24 15:3,9 23:24 25:4 29:20 31:19 39:4 40:6 44:18 46:2,3,5

**students'** 44:14

**study** 8:14

**studying** 8:17

**sufficient** 44:11

**suggest** 42:3

**suitable** 22:17,19

**surroundings** 18:6, 13 25:1

**suspicion** 46:8

**suspicions** 36:19

**suspicious** 46:6

**sworn** 5:2,21

**syllabus** 15:6 18:14

---

**T**

**taking** 6:3 25:5 46:3 51:12

**talk** 10:11 12:13 13:8 16:20 35:5 51:8

**talking** 23:5 30:18,20

**tax** 28:14 29:21

**telephone** 33:2

**temporary** 44:2

**test** 9:8,9,24 11:19 17:21,23 22:15,22 23:10 24:16 25:5,9,18 26:23 27:3,4 29:13,15 40:5

**testified** 5:14 25:13 42:22

**testify** 6:15,18 36:11

**testifying** 6:1

**testimony** 28:15 29:17 43:7 53:2

**testing** 17:14 22:17, 19 23:7 30:10,21 31:9, 15 32:4,13 40:16 48:19 49:4

**tests** 9:1,5

**text** 14:15 33:4

**thin** 24:14

**thing** 35:16 36:2 50:3, 22

**things** 5:17

**thought** 41:17 42:1

**time** 9:2 12:11 13:14, 15 15:8 18:21,23 19:11 23:15 24:17 25:7,8,17 29:8 31:23 35:6 37:21 41:14 42:9, 20 43:17 45:1,19 47:4 50:16

**times** 31:4 50:2,21

**TIN** 27:18

**TLO** 40:5

**today** 5:11,19 6:15,18 8:4 9:2,24 12:23 13:2 52:12

**Todd** 5:6

**top** 30:16,19

**torso** 39:2 47:9,13

**total** 25:21 44:13

**transferred** 8:9

**transmission** 23:2

**Tri-c** 8:9,11 9:2

**trial** 44:19

**true** 15:23 48:13

**trust** 22:9,13

**truthfully** 6:15,18

**Turning** 39:11

---

**U**

**unavailable** 21:20

**understand** 6:10,22 17:11 18:10

**understanding** 46:24

**understood** 11:10

**University** 19:13 30:21 31:16 32:14,17 40:1,8 47:1 48:20,24

**upper** 39:2 47:9,13

**upside** 24:7

---

**V**

**vast** 35:18

**verified** 35:13

**verify** 14:11

**video** 23:16

**view** 27:24 47:11

**viewing** 46:5

**violating** 19:21

**Virtual** 8:8

**vouched** 40:21

---

**W**

**wait** 7:6

**walk** 8:6

**ways** 43:1

**webcam** 47:8

**webcams** 46:4

**website** 10:16

**witnesses** 25:13 42:22

**words** 14:19 15:16 47:5

**work** 5:17 19:10 30:6 45:9 52:17

**working** 5:18 47:17

---

**workspaces** 15:9

**write** 5:23

**writing** 11:9

**wrote** 37:1,3,7 38:5 41:8

---

**Y**

**Yesterday** 9:12

**younger** 11:20,21 25:19

---

**Z**

**Zoom** 39:4 47:12,24 49:17,18