IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| Aaron M. Ogletree | ) | Case No. 1:21-cv-00500 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| vs. | ) | **Plaintiff's opposition to** |
| | ) | **Defendant's motion for summary** |
| Cleveland State University, et al. | ) | **judgment** |
| | ) | |
| Defendants. | ) | |

    The University's motion for summary judgment neglects the Supreme Court's "proper standard" to evaluate searches by public school officials. *See New Jersey v. T.L.O.*, 469 U.S. 325, 327 (1985). It also neglects the unbroken line of jurisprudence recognizing the home as the "very core" of the Fourth Amendment. *See Silverman v. United States*, 365 U.S. 505, 511 (1961). It instead argues for the creation of a new exception to the Fourth Amendment's warrant requirement that would permit public school officials to intrude into student homes to look for evidence a student might try to cheat on a test in the future—and to do so with neither probable cause nor reasonable suspicion. But it is axiomatic that warrantless searches "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). The rule the University advocates for is not one of them. And its practice of suspicionless searches is unreasonable. It therefore violates the Fourth Amendment. For the reasons discussed below and in Plaintiff's motion for summary judgment, the Court should deny the University's motion and grant Plaintiff's.

## LAW AND ANALYSIS

**I.     The room scan practice is a search under the Fourth Amendment.**

The University's room scan practice is a search within the meaning of the Fourth Amendment. A "Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 32 (2001) (*citing Katz*, 389 U.S. at 361); *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) (*quoting Smith v. Maryland*, 442 U.S. 735, 740 (1979)) ("When an individual 'seeks to preserve something as private,' and his expectation of privacy is 'one that society is prepared to recognize as reasonable,' we have held that official intrusion into that private sphere generally qualifies as a search...."). Though one might have a protectable privacy expectation in a variety of places, "[i]n none is the zone of privacy more clearly defined" than inside the home—"a zone that finds its roots in clear and specific constitutional terms." *Payton v. New York*, 445 U.S. 573, 589 (1980). It is "the prototypical . . . area of protected privacy." *Kyllo*, 533 U.S. at 34. If there is any quintessential location where an individual has a subjective expectation of privacy, it is in their home—and even more so, in the bedroom; And if there is any physical space where society is willing to recognize an expectation of privacy as reasonable it is in the home—and even more so, in the bedroom.

The march of technology has not diminished the home's rightful status as a Fourth Amendment sanctuary. Mindful of technology's ability to "enhance[] the Government's capacity to encroach upon areas normally guarded from inquisitive eyes," the Supreme Court has "sought to 'assure[] preservation of that degree of

2

privacy against government that existed when the Fourth Amendment was adopted.'" *Carpenter*, 138 S. Ct. at 2214 (*quoting Kyllo*, 533 U.S. at 34).

To that end, the Court has explained that "[w]hen the Fourth Amendment was adopted, as now, to 'search' meant '*to look over or through for the purpose of finding something*; to explore; *to examine by inspection*; as, to search the house for a book; to search the wood for a thief.'" *Kyllo*, 533 U.S. at 32 n.1 (*quoting* N. Webster, An American Dictionary of the English Language 66 (1828) (reprint 6th ed. 1989)) (emphasis added). That is exactly what the University does when conducting room scans. Its practice is to "look over" a student's surroundings "for the purpose of finding something"—namely, evidence that a student might try to cheat. Or to put it differently, the proctor "examine[s]" the student's surroundings by "inspect[ing]" them. Either way, it requires no analysis to understand that such a practice meets the Supreme Court's definition of a search.

The University's argument to the contrary hinges on its premise that the "cases recognize that inspections of a person's home made for non-criminal purposes are not searches if they are not coerced and limited in scope." (*See* Defendants' Motion for Summary Judgment at 3). That is a false premise; case law recognizes no such thing.

The basis for the University's premise is *Wyman v. James*, 400 U.S. 309 (1971). But the University overreads that case. The Supreme Court held in *Wyman* that a social worker's entrance to a home "pursuant to a New York state aid to dependent children program" was not a Fourth Amendment search. *Andrews v.*

3

*Hickman County*, 700 F.3d 845, 859 (6th Cir. 2012) (*citing Calabretta v. Floyd*, 189 F.3d 808, 816–18 (9th Cir. 1999)). The Sixth Circuit interprets the case as limited to that particular context. Referring explicitly to "the sanctity of the home under the Fourth Amendment," the Sixth Circuit rejects the argument that *Wyman* created a blanket exception from the Fourth Amendment for social workers. *Andrews*, 700 F.3d at 859. It holds instead that social workers, "like other state officers," must either have a warrant or an exception to the warrant requirement before searching a home. *Andrews*, 700 F.3d at 859 (collecting cases). *Wyman*, therefore, did not even create a broad Fourth Amendment exception for social workers under all circumstances, let alone for all civil authorities.

To the contrary, "[t]he protections of the Fourth Amendment are not limited to criminal investigations." *United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 489 (6th Cir. 2014). An unbroken line of precedent spanning back a century establishes that the Fourth Amendment applies to searches conducted for noncriminal purposes. *E.g., Weeks v. United States*, 232 U.S. 383, 392 (1914); *T.L.O.*, 469 U.S. at 335 (*citing Camara v. Municipal Court*, 387 U.S. 523, 528 (1967), *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312–13 (1978), and *Michigan v. Tyler*, 436 U.S. 499, 506 (1978)); *see Chandler v. Miller*, 520 U.S. 305, 313 (1997) (Fourth Amendment applies to state law requiring drug testing of candidates for elected office); *Clemons v. Couch*, 6th Cir. No. 1906411, 2021 U.S. App. LEXIS 20112, at *11, n.4 (July 7, 2014). That is particularly so where the home is involved. Just this year, the Supreme Court rejected the argument that the Fourth

4

Amendment permits the warrantless search of a home undertaken for "noncriminal 'community caretaking functions.'" *Caniglia v. Strom*, 593 U.S. __, 141 S. Ct. 1596, 1598 (2021). Thus, it matters not that CSU's searches are not for law enforcement purposes.

*T.L.O.* itself illustrates the point. The threshold question in *T.L.O.* was whether the Fourth Amendment (via the Fourteenth) applies at all "to searches conducted by public school officials." *T.L.O.*, 469 U.S. at 334. The Court held that "it does"—a proposition it held to be "indisputable." *Id.* In so holding, the Court explicitly refused to draw a distinction based on the noncriminal purpose underlying most searches by school officials. *Id.* at 335. The Court recognized it would be "'anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior.'" *Id.* at 336 (*quoting Camara v. Municipal Court*, 387 U.S. 523, 530 (1967)). Accepting CSU's argument would create a slightly different—but equally incongruous—anomaly. It would mean that the Fourth Amendment protects students within the walls of their schools, but not within the walls of their homes. Such a holding would be irreconcilable with the black-letter axiom that the home stands at the "very core" of the Fourth Amendment. *See Silverman*, 365 U.S. at 511.

Precedent also belies the University's argument that "limited" official intrusion into a private home is permissible. "Homes are a uniquely protected space under the Fourth Amendment, and that protection 'has never been tied to measurement of the quality or quantity of information obtained.'" *United States v.*

5

*Lichtenberger*, 786 F.3d 478, 484 (6th Cir. 2015) (*quoting Kyllo*, 533 U.S. at 37). "Indeed, with regard to the home, there is no *de minimis* exception to the Fourth Amendment." *Smith v. City of Wyoming*, 821 F.3d 697, 714 (6th Cir. 2016). Absent an exception, a warrantless search of a home—even one intruding by just "'a fraction of an inch'"—is impermissible. *Kyllo*, 533 U.S. at 37 (*quoting Silverman*, 365 U.S. at 512); *Smyth v. Lubbers*, 398 F. Supp. 777 89 (W.D. Mich. 1975) (recognizing that the Fourth Amendment is "flexible enough to meet a variety of public needs, but it will not admit of slight infringements"). Whether lengthy or brief, limited or broad, CSU's practice intrudes upon student homes and therefore implicates the Fourth Amendment.

In short, courts do not read *Wyman* as broadly as CSU does, and accepting the University's argument would expand the case where it has never gone before. No court has extended it to searches by school officials. For good reason: the Supreme Court has explained the "proper standard" to address the constitutionality of such searches comes from *T.L.O.* If the Court in that case wanted to adopt the reasoning of *Wyman* by holding the Fourth Amendment does not apply at all, it could have. It did not, and courts since then have applied *T.L.O.* to searches by school officials. *E.g., Safford Unified Sch. Dist. #1 v. Redding*, 557 U.S. 364, 370 (2009); *G.C. v. Owensboro Pub. Sch.*, 711 F.3d 623 (6th Cir. 2013). At a minimum, the Fourth Amendment provides at least as much protection here as the *T.L.O.* test, if not more.

Applying *Wyman* would not only disregard *T.L.O.*, it would create two brand

6

new exceptions to the Fourth Amendment. One would be that it is no "search" at all to search students for cheating. The second would permit warrantless intrusion into a student's home for any "non-criminal" pedagogical purpose as long as it is "not coerced and limited in scope." The former would eviscerate *T.L.O.* The latter would swallow decades of jurisprudence about the sanctity of the home under the Fourth Amendment. The constitutional mandate of a warrant before conducting a search is subject to "only a few specifically established and well-delineated exceptions." *Katz*, 389 U.S. at 357. The *T.L.O.* test is one of them. What the University advocates is not. The Court should not accept its invitation to create a new one.

## II. The room scan practice is unreasonable under the Fourth Amendment.

As explained further in Ogletree's motion for summary judgment, the room scan practice is unreasonable and thus violates the Fourth Amendment. It is a "basic principle of Fourth Amendment law" that warrantless searches inside the home "are presumptively unreasonable." *Payton*, 445 U.S. at 586 (internal quotation omitted); *Kentucky v. King*, 563 U.S. 452, 459 (2011); *United States v. Karo*, 468 U.S. 705, 715 (1984). That presumption holds here.

CSU's argument that nobody physically entered Ogletree's home misses the point. There is no material distinction between allowing a school official inside the home to look around and commandeering a student's webcam to do the same. What's more, accepting the University's argument that this was not a search at all would mean that a school official could in fact physically enter the home. After all, *Wyman* itself involved physical entry. If that was not a search, then neither would

7

be the principal entering a house to look for evidence of cheating.

The University's reference to five other colleges that it claims have a similar practice is irrelevant. For that matter, it is not clear that three of the five colleges CSU selectively cited even require a room scan. The University of Nevada, Reno website does not identify the use of a room scan.[1] Kent State's website refers to a room scan for tests that "require it," leading only to the conclusion that not all of them do.[2] And Texas Tech's website tells students "you *may* be randomly asked" to conduct one.[3] Rather than requiring *all* students to perform a room scan, it does so "randomly." At any rate, an unconstitutional search does not become permissible because other government bodies conduct them as well. The Fourth Amendment's protections would be meaningless otherwise.

On the other hand, though the University cites the Ohio Supreme Court's online bar examination policy, it fails to point out that the Court *doesn't* require a room scan for the bar exam.[4] The Court instead uses photo identification, artificial intelligence, and facial-recognition to preserve test integrity.[5] On top of that, unlike

---

[1] https://www.unr.edu/digital-learning/instructional-resources/instructional-technology-resources/online-test-proctoring (last visited December 13, 2021).
[2] https://www.kent.edu/testing-placement/honesty-statement-and-remote-proctoring-agreement (last visited December 17, 2021). Kent State has students sign an honesty pledge not to cheat—yet another less-invasive tool CSU could use to preserve test integrity
[3] https://www.depts.ttu.edu/elearning/blackboard/proctorio/proctorio-student-faq.php (last visited December 17, 2021) (emphasis added).
[4] *See* https://www.supremecourt.ohio.gov/attysvcs/admissions/remotetestingfaqjuly2021.pdf (last visited December 7, 2021).
[5] *Id.*

CSU, the Supreme Court requires test-takers to "remain seated with their entire face visible to the camera for the duration" of each test session.[6] All these methods are both available to the University and less intrusive than a room scan. One would be hard-pressed to find many higher stakes remote examinations than the bar exam. If a room scan is unnecessary to preserve test integrity there, it is difficult to conceive why it would be for an undergraduate exam.

## CONCLUSION

For the reasons stated above and in Plaintiff's motion for summary judgment, the Court should deny Defendants' motion for summary judgment.

                                                    Respectfully submitted,

                                                    /s/ Matthew D. Besser
Matthew D. Besser (0078071)
Cathleen M. Bolek (0059884)
**BOLEK BESSER GLESIUS LLC**
Monarch Centre, Suite 302
5885 Landerbrook Drive
Cleveland, Ohio 44124
T 216.464.3004
F 866.542.0743
cbolek@bolekbesser.com
mbesser@bolekbesser.com

*Counsel for Plaintiff*

---

[6] *Id.* at 4.

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that: a copy of the foregoing was filed this 22nd day of December, 2021; this case is assigned to the standard track; and, this motion is within the page limits of Local Rule 7.1(f). Notice of the foregoing will be served by operation of the Court's electronic filing system upon:

Todd R. Marti
Ashley A. Barbone

*Counsel for Defendants*

                                             /s/ Matthew D. Besser
                                             *Counsel for Plaintiff*