THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AARON M. OGLETREE | : | |
| | : | |
| *Plaintiff* | : | Case No. 1:21-cv-00500 |
| | : | |
| v. | : | |
| | : | Judge J. Phillip Calabrese |
| CLEVELAND STATE UNIVERSITY, *et al.* | : | |
| | : | |
| *Defendants* | : | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**DAVE YOST (0056290)**
**Ohio Attorney General**
**TODD R. MARTI (0019280)**
*Trial Counsel*
**ASHLEY A. BARBONE (0083666)**
**Assistant Attorneys General**
**Office of the Ohio Attorney General**
**Education Section**
**30 E. Broad Street, 16th Floor**
**Columbus, OH 43215**
**Telephone:  (614) 306-1793**
**Facsimile:   (614) 644-7634**
**Todd.Marti@OhioAGO.gov**
**Ashley.Barbone@OhioAGO.gov**

*Counsel for Defendants*

1

## TABLE OF CONTENTS

I. Ogletree's motion fails because he has not provided undisputed evidence that the room scan was a "search" ..........................................................................................3

    A. Ogletree has the burden of providing uncontroverted evidence that he was subjected to a "search" ..........................................................................................3

    B. Undisputed facts establish that the room scan was not a "search" under *Wyman v. James* and its progeny ..........................................................................................4

    C. Undisputed facts establish that the room scans are not a search under *Katz v. United States* and its progeny because they are "routine," are in "general public use," and one of the "operational realities" of remote testing ..........................................................................................4

II. Undisputed facts establish that the room scan was reasonable ..........................................................................................6

    A. The scan was reasonable without individualized suspicion ..........................................................................................6

    B. The scan was not intrusive ..........................................................................................10

    C. Room scans sufficiently advance CSU's undisputedly legitimate interest in deterring and detecting cheating ..........................................................................................11

Exhibits:

    Exhibit 1 – Affidavit of Grace Catherine Clifford

**I.  Ogletree's motion fails because he has not provided undisputed evidence that the room scan was a "search."**

   **A.  Ogletree has the burden of providing uncontroverted evidence that he was subjected to a "search."**

A plaintiff seeking affirmative relief through summary judgment must meet a very high standard. He must produce uncontradicted evidence establishing each element of his claim. "A plaintiff moving for summary judgment, as to an issue on which plaintiff has the burden of proof at trial, must offer supporting evidence that would meet the directed verdict standard, not controverted by evidence in defendant's opposition to the summary judgment motion." F. James, G. Hazard, & J. Leubsdorf. *Civil Procedure* § 4.14 (4th ed. 1992) (emphasis added). "This is a very heavy burden and shows why summary judgment can be granted to plaintiff … only in unusual circumstances." *Id*.

Ogletree asserts a Fourth Amendment claim via 42 U.S.C. § 1983. A § 1983 "plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). A party asserting a Fourth Amendment violation has the burden of proving that violation. *Rawlings v. Kentucky*, 448 U.S. 98, 104, (1980); *Rakas v. Illinois*, 439 U.S. 128, 130 (1978), fn. 1; *Florida v. Riley*, 488 U.S. 445, 455 (1989) (O'Connor, J., concurring). Ogletree must therefore provide uncontroverted evidence of every element of his Fourth Amendment Claim.

"The Fourth Amendment's protections hinge on the occurrence of a 'search,'" *Widgren v. Maple Grove Twp.*, 429 F.3d 575, 578 (6th Cir. 2005), so it is a "threshold question" that must be answered here. *Sanchez v. Cty. of San Diego*, 464 F.3d 916, 920 (9th Cir. 2006). Ogletree offers *nothing* on this element, but instead simply assumes that the scan was a search. That is no innocent oversight because the record contains two bodies of undisputed evidence establishing that no "search" occurred.

3

      **B.    Undisputed facts establish that the room scan was not a "search" under *Wyman v. James* and its progeny**.

As explained in the Defendants' motion for summary judgment, *Wyman v. James*, 400 U.S. 309, 317 (1971); *S.L. v. Whitburn*, 67 F.3d 1299, 1302 (7th Cir. 1995); and *Sanchez v. Cty. of San Diego*, 464 F.3d 916, 919-921 (9th Cir. 2006) hold that inspections of a person's home made for non-criminal purposes are not searches if they are not coerced and are limited in scope. As also explained in that motion, undisputed facts establish the indicia those cases identify as negating a search. Doc. No. 29, pp. 5-9, PageID ## 462-466. That precludes the conclusion that the scan was a search.

      **C.    Undisputed facts establish that the room scans are not a search under *Katz v. United States* and its progeny because they are "routine," are in "general public use," and one of the "operational realities" of remote testing.**

"In determining whether a particular form of government-initiated electronic surveillance is a 'search' within the meaning of the Fourth Amendment, our lodestar is *Katz v. United States*, 389 U.S. 347 (1967)." *Smith v. Maryland*, 442 U.S. 735, 739 (1979). One element of the *Katz* test is that the fourth Amendment claimant's expectation of privacy is objectively reasonable. That requires a court to consider "whether the individual's subjective expectation of privacy is one that society is prepared to recognize as 'reasonable,' – whether, in the words of the *Katz* majority, the individual's expectation, viewed objectively, is 'justifiable' under the circumstances.'" *Id*. at 740 (citations and some internal punctuation omitted).

That requirement applies to searches of houses. The Court has "applied this principle to hold that a Fourth Amendment search does not occur – even when the explicitly protected location of a house is concerned – unless … society [is] willing to recognize that expectation as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33, (2001) (quoting *California v. Ciraolo*, 476 U.S. 207, 211 (1986)).

4

This element considers whether the claimant's personalized expectation of privacy is too sensitive when measured against common experience. For example. the Supreme Court has squarely, and repeatedly, held that this element is not shown if the matters the claimant seeks to conceal are observable via conduct that is "routine" in modern society. *California v. Ciraolo*, 476 U.S. 207, 218 (1986); *Florida v. Riley*, 488 U.S. 445, 449-450 (1989) and 855 (O'Connor, J., concurring). Consistent with that, the Court has observed that this element is likely not present when challenged technological means are "in general public use," *Kyllo*, 533 U.S at 34, 50 and are ones that "society accepts as proper behavior." *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 757 (2010). The cases also tell us that "operational realities" and "actual [] practices and procedures" can make a claimant's expectations unreasonable. *Id.*; *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987) (plurality).

A Fourth Amendment claimant must show the objective reasonableness of his expectations. He bears "the burden of proving that his expectation of privacy was a reasonable one, and thus that a 'search' within the meaning of the Fourth Amendment even took place." *Riley*, 488 U.S. at 455 (O'Connor, J., concurring).

Ogletree offers nothing on this point, but the record contains ample undisputed evidence negating this element. One witness testified that room scans are "standard industry wide practice" Doc. No. 25-1, pp. 38, 63, PageID ## 291, 316. Another testified that she has proctored dozens of remote exams, that the scan at issue here was typical of those she has requested, and that no one has ever objected to the scans. Doc. No. 24-1, pp. 34-35 PageID ## 217-218 (number of exams remotely proctored) 29-30, 56 PageID ## 212-213, 239 (no objections). Those realities are further demonstrated by the resources collected in Exhibit 1 to the Defendants' Motion for Summary Judgment and the nonchalance of the other students' responses to the request for a scan during the

5

exam at issue here. Doc. No. 29-1, PageID ## 470-471;. No. 28 at 1:30-1:45, 3:36-4:23, 5:38-5:59. That evidence—all of it unrebutted—establish that room scans are "routine," "in general public use," and are part of the "operational realities" and "actual [] practices and procedures" of remote testing. That means that Ogletree's expectations are objectively unreasonable, precluding his Fourth Amendment claim.

## II. Undisputed facts establish that the room scan was reasonable.

Ogletree argues that the scan was unreasonable in three respects: because it was not based on individualized suspicion, because it was unduly intrusive, and because the scan was neither necessary nor effective. He is mistaken in each of those contentions

### A. The scan was reasonable without individualized suspicion.

Ogletree's assertion that the room scan was per se unreasonable because it was not based on individualized suspicion overlooks multiple precedents. The Supreme Court has repeatedly held that government action covered by the Fourth Amendment can be reasonable without individualized suspicion. *United States v. Martinez-Fuerte*, 428 U.S. 543, 561(1976) ("the Fourth Amendment imposes no irreducible requirement of such suspicion"); *Skinner v. Ry. Labor Executives' Assn.*, 489 U.S. 602, 624 (1989) ("We made it clear, however, that a showing of individualized suspicion is not a constitutional floor, below which a search must be presumed unreasonable"); *Natl. Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 665 (1989) (noting "the longstanding principle that neither a warrant nor probable cause, nor, indeed, any measure of individualized suspicion, is an indispensable component of reasonableness in every circumstance"); *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 449-450 (1990); *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 654, (1995); *Bd. of Edn. v. Earls*, 536 U.S. 822, 829 (2002)

Those holdings are not limited to cases involving students' extracurricular activities. To the contrary, they mostly involved claims by adults enjoying undiminished Fourth Amendment rights. Indeed, *Wyman v. James*, 400 U.S. 309 (1971), found a home inspection reasonable without even considering individualized suspicion. *Id*. at 318-324.

So what factors support a search without individualized suspicion?

One is that the government action does not involve the discretionary targeting of a particular individual, but instead implements a generally applicable policy/practice. *Martinez-Fuerte*, 428 U.S. at 559; *Skinner*, 489 U.S. at 621-622; *Sitz*, 496 U.S. at 452, 454. cf *Delaware v. Prouse*, 440 U.S. 648, 662 (1979). That makes sense when one considers the "essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of reasonableness upon the exercise of discretion by government officials[.]" *Id*. at 653-4

Another is that the action is minimally intrusive. This has an objective and subjective component. "In considering the severity of the intrusion on individual liberty, the court must consider both the objective intrusion of the [action]—the duration of the [activity] and the intensity of any brief questioning and visual inspection that might attend it—and its subjective intrusion—its potential for generating fear and surprise" among those subjected to it. *United States v. Huguenin*, 154 F.3d 547, 552 (6th Cir. 1998). See *Martinez-Fuerte*, 428 U.S. at 558, 559, 560; *Skinner*, 489 U.S. at 625; *Von Raab*, 489 U.S. at 672, n. 2; *Sitz*, 496 U.S. at 451, 453. Cf. *Prouse*, 440 U.S. at 656, 657.

A third factor is that the search is made of one who engages in what has traditionally been a heavily regulated activity. *Skinner*, 489 U.S. at 627-628; *Earls*, 536 U.S. at 832; *Knox Cty. Edn. Assn. v. Knox Cty. Bd. of Edn.*, 158 F.3d 361, 384 (6th Cir. 1998); *UAW, Local 1600 v. Winters*, 385 F.3d 1003, 1012 (6th Cir. 2004). Cf. *Prouse*, 440 U.S. at 623, n. 6.

7

Finally, the Court has noted that an individualized suspicion requirement is particularly inappropriate if the search is part of a program that has a deterrent purpose. *Martinez-Fuerte*, 428 U.S. at 557; *Skinner*, 489 U.S. at 629-630, 632; *Von Raab*, 489 U.S. at 666, 674-675, 675 n. 3; *Earls*, 536 U.S. at 836; *UAW, Local 1600 v. Winters*, 385 F.3d 1003, 1012 (6th Cir. 2004). See also, *Wyman*, 400 U.S. at 323.

The room scan at issue here had all those attributes.

No one at CSU exercised discretion to target Ogletree in particular. The room scan was required of every student in his class pursuant to the professor's blanket directions. As Ogletree correctly notes, such scans are required by "default." Doc. No. 30, p. 11, PageID # 486.

The scan was minimally intrusive. Objectively, it lasted for less than a minute, no one entered Ogletree's home, he was given advanced notice of the scan, it was limited to the one room he chose to take the test in, he physically directed the scan, no confidential information was revealed, and access to the results of the scan were tightly limited. Subjectively, neither Ogletree nor the other test takers asked to conduct the scans seemed to be upset by the request, Doc. No. 28 at 1:30-1:45, 3:36-4:23, 5:38-5:59. Further, the proctor testified that she has never had a student object to a scan during the remote tests she proctored and that none of her colleagues have ever mentioned an examinee objecting to a room scan. Doc. No. 24-1, pp. 34-35 PageID ## 217-218 (number of exams remotely proctored) 29-30, 56 PageID ## 212-213, 239 (no objections).

The scan was conducted in connection with a traditionally regulated activity. Students taking tests have always been subjected to close regulation, and the record here indicates that the level of scrutiny for in person exams is far closer than that involved in the scan at issue here. Doc. No. 24-1, pp. 16-18 PageID ## 199-201

Finally, the scans have a deterrent purpose. The scans are as much intended to deter the presence of improper aids (others there to help, crib sheets, etc.) as they are to detect them.

Those things make the absence of individualized suspicion reasonable.

That is not changed by *New Jersey v. T. L. O.*, 469 U.S. 325 (1985*), G.C. v Owensboro Public Schools*, 711 F.3d 623 (6th Cir. 2013), or the case string cited at pp. 10-11 of Ogletree's Motion. Doc. No. 30, PageID ## 485-486. That is true for two reasons.

Legally, *T.L.O* did not establish a bright line individualized suspicion requirement. To the contrary, it expressly declined to decide the issue. *Id*. at 342, n. 8 ("We do not decide whether individualized suspicion is an essential element of the reasonableness standard we adopt for searches by school authorities").

Factually, *T.L.O.*, *G.C.*, and the other cases involved qualitatively different types of searches. They were not undertaken pursuant to a generally applicable practice/policy, but were discretionary searches that targeted particular students based on particular facts. Other courts, including the Sixth Circuit, have recognized the difference between those two types of searches. *United States v. Huguenin*, 154 F.3d 547, 554, n. 5 (6th Cir. 1998) ("The holdings of these cases, however, are not directly applicable here. They apply in cases where an officer has singled out one car from the many that may be on the road, and the officer is not stopping every motorist who drives by"); *Shade v City of Farmington*, 309 F.3d 1054, 1059-1060 (8th Cir. 2002); *State v. Rodriguez*, 521 S.W.2d 1, 16 (noting the "categorically distinct type[s] of search[es]"). Indeed, Ogletree himself implicitly recognizes that difference in his flawed attempt to distinguish some of the cases upholding searches without individualized suspicion. Doc. No. 30, p. 11, n. 1, PageID # 486. Further, the involuntary searches in those cases were more invasive than the brief, superficial, self-directed, scan at issue here. Those cases are therefore inapposite.

9

## B. The scan was not intrusive.

Ogletree also argues that the scan was unreasonable because it involved his home and because such scans could, in other cases, reveal intimate details of a student's life. That argument fails on three levels.

*First, the fact that the scan involved Ogletree's home is not dispositive.* While a person's home does indeed trigger strong Fourth Amendment protection, home inspections undertaken for non-criminal purposes are are not per se unreasonable. That is evinced by *Wyman v. James*, 400 U.S. 309 (1971); *S.L. v. Whitburn*, 67 F.3d 1299 (7th Cir. 1995); and *Sanchez v. Cty. of San Diego*, 464 F.3d 916 (9th Cir. 2006). Each of those cases held that home inspections—inspections far more invasive than the brief scan at issue here—were reasonable. *Wyman*, 400 U.S. at 321; *S.L. v. Whitburn*, 67 F.3d at 1309; *Sanchez*, 464 F.3d at 924.

That is not changed by Ogletree's cases on this point. Neither *Florida v. Jardines*, 569 U.S. 1 (2013), *United States v. Karo*, 468 U.S. 705 (1984), nor *Kyllo v. United States*, 533 U.S. 27 (2001) undertook the type of balancing involved here because they were criminal cases. They therefore tell us nothing about reasonableness under the distinct standards governing non-criminal, special needs/administrative, searches.

*Second, the scan was minimally intrusive under the standards that control this type of search*. *Wyman*, *S.L.,* and *Sanchez* set the standards for determining the reasonableness of non-criminal home inspections. The undisputed facts of this case easily meet those standards, as discussed at pp. 9-11 of the Defendants' Motion for Summary Judgment, Doc. No.29, pp. 9-11, PageID ## 466 468. The Defendants incorporate that analysis by reference here.

*Third, the hypotheticals discussed at pp. 14-15 of Ogletree's motion cannot support his claims*. Doc. No. 30, pp. 18-23 PageID ## 489-490. This scan involved none of the matters

hypothesized there. The Supreme Court tells us that "Fourth Amendment cases must be decided on the facts of each case, not by extravagant generalizations." *Dow Chem. Co. v. United States*, 476 U.S. 227, 239, n.5 (1986). Indeed, the Court has "never held that potential, as opposed to actual, invasions of privacy" violate the Fourth Amendment. *Id*., (quoting *United States v. Karo*, 468 U.S. 705, 712 (1984)).

### C. Room scans sufficiently advance CSU's undisputedly legitimate interest in deterring and detecting cheating.

Ogletree does not dispute the legitimacy of the interest served by the room scan: deterring/detecting the presence of others or forbidden study aids that would improperly help the examinee. Instead, he argues that a scan is not the right tool for that job. He claims that scans are unduly intrusive because there are supposedly less invasive alternatives and that scans are underinclusive because they do not address some means of cheating. He also claims that scans are ineffective because they have not detected any cheating. Those arguments are flawed on multiple levels.

Before addressing those specific arguments, it is important to note the limited nature of courts' scrutiny of such matters. That scrutiny is "not meant to transfer … to the courts the decision as to which among reasonable alternative[s] … should be employed[.]" *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 453 (1990). Instead, "for purposes of Fourth Amendment analysis, the choice among such reasonable alternatives remains with the governmental officials who have a unique understanding of, and a responsibility for" the governmental function giving rise to the case. *Id*. at 453-4. As then Circuit Judge Alito noted, the "'effectiveness' prong does not require a 'searching examination.'" *United States v. Hartwell*, 436 F.3d 174, 180 (3d Cir. 2006). Consequently, "in order to satisfy the effectiveness prong, a [measure] need only be one reasonable

11

method of deterring the prohibited conduct; it need not be the most effective measure." *Maxwell v. City of New York*, 102 F.3d 664, 667 (2d Cir. 1996).

*Ogletree's alternatives are operationally insufficient and legally immaterial*. Operationally, Ogletree suggests several (in his view) less intrusive alternatives, but none would adequately fulfill the deterrent/detective functions served by scans:

- Proctoring standards protect against lax or collusive proctoring, not the presence of illicit aids during an exam. And in any event, they only apply in situations where tests are proctored in person, rather than remotely. Doc. No, 25-1, pp. 24-25, PageID ## 278-279.

- ID requirements protect against stand ins for examinees. They do nothing to deter or detect access to improper helps for whoever ends up taking the test.

- The various computer programs Ogletree cites are either inapposite or not appropriate for students requiring accommodations. Programs detecting or preventing plagiarism and resort to on-line resources do nothing to deter or detect the physical presence of other persons, crib sheets, or other prohibited off-line materials. Although the recording software he references (Respondus Monitor and Honorlock) might help detect students resorting to such improper resources, they would not work in case, like this where students are entitled to special accommodations because of their disabilities. Technologically, they would not interface with other technological aids needed for visually impaired students. Pragmatically, many students' disabilities require that they be permitted to move about their surroundings during an exam, so software that simply detects/records movement would not seperate the wheat of authorized movements from the chaff of illicit ones (those accessing prohibited helps). See Exhibit 1 hereto.

Legally, the presence of other alternatives, even less restrictive ones, does not make a search unreasonable. The Supreme Court "has repeatedly stated that reasonableness under the Fourth Amendment does not require employing the least intrusive means, because the logic of such elaborate less-restrictive-alternative arguments could raise insuperable barriers to the exercise of virtually all search-and-seizure powers." *Bd. of Edn. v. Earls*, 536 U.S. 822, 838 (2002). See also *United States v. Martinez-Fuerte*, 428 U.S. 543, 557, n. 12 (1976); *Skinner v. Ry. Labor Executives' Assn.*, 489 U.S. 602, 629.n. 12 (1989); *Vernonia School Dist. 47J v. Acton*, 515 U.S.

646, 664, n. 3 (1995); *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 764 (2010) ("Even assuming there were ways that OPD could have performed the search that would have been less intrusive, it does not follow that the search as conducted was unreasonable").

*Ogletree's contention that scans are unreasonable because they do not address all possible means of cheating is flawed on two levels.* First, it is at odds with the cases rejecting indistinguishable arguments. Parties challenging similar deterrent/detection searches have consistently made—and lost—such arguments. *Cassidy v. Chertoff*, 471 F.3d 67, 86 (2d Cir. 2006); *Corbett v. Transportation Sec. Admin.*, 767 F.3d 1171 (11th Cir. 2014); *Ruskai v. Pistole*, 775 F.3d 61 (1st Cir. 2014). Consistent with the limited nature of an effectiveness evaluation, those cases recognized that "the Fourth Amendment does not require that a suspicionless search be foolproof," and that "the Supreme Court has not required … precision tailoring[.]" *Corbet*, 767 F.3d at 1181; *Rukaai*, 775 F.3d at 74. They have therefore rejected such challenges.

Second, Ogletree's all or nothing argument overlooks the fact that "the government may deal with one part of a problem without addressing all of it," even in the Fourth Amendment context. *Rukaai*, 775 F.3d at 74. Perhaps other measure are needed, but that does not invalidate the measures that have been taken.

*Ogletree's argument based on the fact that room scans have never detected cheating overlooks scans' deterrent purpose.* "When the Government's interest lies in deterring highly [improper] conduct, a low incidence of such conduct, far from impugning the validity of the scheme for implementing this interest, is more logically viewed as a hallmark of success." *Von Raab*, 489 U.S. at 676 n. 3.

13

Respectfully submitted,

**DAVE YOST (0056290)**
**Ohio Attorney General**

*/s/ Todd R. Marti*

TODD R. MARTI (0019280)
*Trial Counsel*
ASHLEY A. BARBONE (0083666)
Assistant Attorneys General
Office of the Ohio Attorney General
Education Section
30 E. Broad Street, 16th Floor
Columbus, OH 43215
Telephone: (614) 644-7250
Facsimile: (614) 644-7634
Todd.Marti@OhioAGO.gov
Ashley.Barbone@OhioAGO.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically on December 22, 2021. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's systems.

*/s/ Todd R. Marti*

TODD R. MARTI (0019280)
Assistant Attorney General

14