IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **AARON M. OGLETREE** | : | |
| | : | |
| *Plaintiff* | : | Case No. 1:21-cv-00500 |
| | : | |
| v. | : | |
| | : | Judge J. Phillip Calabrese |
| **CLEVELAND STATE UNIVERSITY**, *et al.* | : | |
| | : | |
| *Defendants* | : | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**DAVE YOST (0056290)**
**Ohio Attorney General**
**TODD R. MARTI (0019280)**
*Trial Counsel*
**ASHLEY A. BARBONE (0083666)**
**Assistant Attorneys General**
**Office of the Ohio Attorney General**
**Education Section**
**30 E. Broad Street, 16th Floor**
**Columbus, OH 43215**
**Telephone:  (614) 644-7250**
**Facsimile:   (614) 644-7634**
**Todd.Marti@OhioAGO.gov**
**Ashley.Barbone@OhioAGO.gov**

*Counsel for Defendants*

1

**TABLE OF CONTENTS**

I. Undisputed facts establish that Ogletree was not subjected to a "search"...........................3

    A. CSU is not seeking a "new exception to the Fourth Amendment," but is invoking the factually indistinguishable precedent of *Wyman v. James*................................3

    B. Ogletree's generalized observations about the Fourth Amendment's protection of homes and application to non-criminal matters provide no basis for distinguishing *Wyman* because *Wyman* specifically considered both things ..................................4

    C. Neither *New Jersey v. T.L.O.*, 469 U.S. 325 (1985) nor *Andrews v. Hickman County*, 700 F.3d 845 (6th Cir. 2012) considered whether the type of inspection at issue here was a search .......................................................................................5

    D. Ogletree's spectre of CSU staff physically entering students' homes is factually unsupported and legally immaterial........................................................................5

II. Undisputed facts establish that whatever search occurred was "reasonable"......................6

CONCLUSION.................................................................................................................................7

**I.     Undisputed facts establish that Ogletree was not subjected to a "search."**

CSU's Motion explained that *Wyman v. James*, 400 U.S. 309 (1971) held that non-coerced, non-criminal, inspections of a person's home are not searches. It showed that Ogletree was not coerced into allowing the scan at issue here; it produced undisputed evidence that he would have been free to take the test if he refused to do the scan and that any later consequences of a refusal would be far less significant than those involved in *Wyman*. Ogletree has never claimed that there were any criminal consequences from either conducting or refusing the scan. That brings this case squarely within *Wyman*'s rule. See generally Doc. No. 29, pp. 5-9, PageID ## 462-466.

Ogletree does not dispute our description of *Wyman* or our analysis of how the facts here correspond to those in *Wyman*. Nor does he argue that *Wyman* has been overruled. Instead he advances several arguments as to why this Court should ignore *Wyman*'s factually on point, and still binding, holding. None withstand scrutiny.

**A.     CSU is not seeking a "new exception to the Fourth Amendment," but is invoking the factually indistinguishable precedent of *Wyman v. James*.**

Ogletree's claim that CSU is asking this Court to break new ground overlooks the fact that *Wyman's* holding on the search point—that non-coerced, non-criminal, inspections are not searches—has been the law since 1971. The Court has *never* disturbed that holding. Further, other courts have continued to follow it in the decades since. *S.L. v. Whitburn*, 67 F.3d 1299, 1302 (7th Cir. 1995); *Sanchez v. Cty. of San Diego*, 464 F.3d 916, 920-921 (9th Cir. 2006); *Marcavage v. Borough of Lansdowne*, 826 F.Supp.2d 732, 742 (E.D.Pa. 2011), *aff'd*. 493 Fed. Appx. 301 (3d Cir. 2012); *Schmid v. Cty. of Sonoma*, N.D.Cal. No. 19-cv-00883-JD, 2021 U.S. Dist. LEXIS 57236 (Mar. 24, 2021), **9-11. This is hardly cutting-edge.

Ogletree has not disputed that both of *Wyman*'s elements are present here. He does not dispute that he was free to refuse the scan. He does not dispute the absence of criminal

3

consequences. That brings this squarely within *Wyman*'s long-standing holding. CSU is not asking this Court to go anywhere the Supreme Court and other courts have not already gone.

> **B. Ogletree's generalized observations about the Fourth Amendment's protection of homes and application to non-criminal matters provide no basis for distinguishing *Wyman* because *Wyman* specifically considered both things.**

Ogletree places great emphasis on the fact that this case involves his home, noting that the Court has consistently highlighted the Fourth Amendment's protection of the home. He also notes that the Court has applied the Fourth Amendment in cases involving non-criminal matters. Those premises are true enough, but not enough to justify his conclusion that this Court should ignore *Wyman*.

The *Wyman* majority explicitly considered the prominence of the home in Fourth Amendment doctrine, as did the dissents. 400 U.S. at 316; 332-333, 334-335 (Douglas, J., dissenting); 339 (Marshall, J. concurring). The Court none the less held that no search occurs if, as here, a home inspection is not coerced and has no criminal consequences. The Supreme Court has considered this point, determined its weight, it has spoken, and we are all bound by its calculus.

The *Wyman* majority also expressly relied on the lack of criminal consequences in its holding about what constitutes a search. That is manifest in its actual holding on whether a search occurred. *Id*. at 317-318. It is also seen in its distinction of similar cases precisely because they involved criminal consequences absent in *Wyman*. *Id*. at 324-325. Once again, *Wyman* considered the very point Ogletree raises, but still came down the way it did. Ogletree's generalized observation therefore provides no basis for departing from *Wyman's* specific holding on this point.

That is not changed by the fact that some of the cases Ogletree cites were decided after *Wyman*. None of those cases considered the question presented here. And in any event, none of those cases (or any other case) overruled *Wyman*. It is therefore "not our prerogative to set this binding precedent aside until the Supreme Court tells us we must." *Meriwether v. Hartop*, 992

4

F.3d 492, 506 (6th Cir. 2021) (quoting *Mayhew v. Town of Smyrna, Tennessee*, 856 F.3d 456, 464 (6th Cir. 2017)).

      **C.     Neither *New Jersey v. T.L.O.*, 469 U.S. 325 (1985) nor *Andrews v. Hickman County*, 700 F.3d 845 (6th Cir. 2012) considered whether the type of inspection at issue here was a search.**

Ogletree's assertion that *New Jersey v. T.L.O.*, 469 U.S. 325 (1985) and *Andrews v. Hickman County*, 700 F.3d 845 (6th Cir. 2012) somehow supersede *Wyman* is flawed on two levels.

First, neither case considered the specific issue of whether a search occurred. In both cases, the courts assumed that the challenged actions were searches and then considered other Fourth Amendment issues relating to those assumed searches. Those cases nowhere purport to limit *Wyman's* holding about defining elements of a search.

Second, neither case presented facts that would allow for the type of holdings Ogletree asserts. Recall that *Wyman's* search holding was based on two elements: lack of compulsion and lack of criminal consequences. 400 U.S. at 317-318. The state actions challenged in *T.L.O.* and *Andrews* were compelled, they were going to happen regardless of what the targets did. Further, the actions at issue in *T.L.O.* resulted in criminal proceedings. Hence neither case involved facts that would allow the deciding courts to limit *Wyman*.

      **D.     Ogletree's spectre of CSU staff physically entering students' homes is factually unsupported and legally immaterial.**

Ogletree's assertion that a holding that no search occurred here could allow CSU officials to physically enter students' homes is flawed in at least two respects.

Factually, there is no evidence that CSU entered Ogletree's home. To the contrary, all agree that never happened. Doc. No. 26-1, p. 26, PageID ##367. Nor is there any evidence that CSU has either the desire or the capability for such actions. Why would CSU even want to do

that, given that the overriding goals of remote testing are to avoid the infectious risks and logistical difficulties of in-person testing? And where is CSU going to find the army of home visiting proctors Ogletree fears?

Legally, the absence of any factual basis for Ogletree's hypothetical makes it immaterial. "Fourth Amendment cases must be decided on the facts of each case, not by extravagant generalizations." *Dow Chem. Co. v. United States*, 476 U.S. 227, 239, n. 5 (1986). Indeed, Court has "never held that potential, as opposed to actual, invasions of privacy" violate the Fourth Amendment. *Id*., (quoting *United States v. Karo*, 468 U.S. 705, 712 (1984)).

## II.     Whatever search occurred was "reasonable."

CSU's motion also explained that the reasonableness of a search is determined by weighing the extent of the intrusion against the government interest it furthers. It identified factors that *Wyman* and its progeny hold minimize intrusion and undisputed evidence establishing that the intrusion here was far less than in those case (brief duration, no physical entry, Ogletree's control over the locus and conduct of the search, advanced notice, reasonable time of execution, lack of abusive conduct, lack of law enforcement involvement). It also identified evidence establishing that the minimal intrusion involved here reasonably furthered legitimate governmental interests (deterring/detecting cheating, lack of viable alternatives, wide acceptance of the practice at issue). Doc. No. 29, pp. 6-7, 9-12, PageID## 463-464, 466-468.

Ogletree does not dispute our description of the formula for calculating reasonability. He does not materially dispute the factual variables CSU relies on in that calculation. Instead, he argues that the scan was unreasonable because, in his view, CSU has less intrusive alternatives. That argument fails, for the reasons set out in CSU's memorandum in opposition to Ogletree's

motion for summary judgment. Doc. No. 34, pp. 11-13, PageID ## 518-520. CSU incorporates that analysis here.

## CONCLUSION

Ogletree asks for a precedent that would have widespread and disruptive consequences. He offers neither on point authority for such a holding nor any viable alternatives to the practice he challenges. He fails to reconcile his request with controlling precedent and persuasive authority rejecting similar claims. His claim should likewise be rejected.

Respectfully submitted,

**DAVE YOST (0056290)**
**Ohio Attorney General**

*/s/ Todd R. Marti*
_____
TODD R. MARTI (0019280)
*Trial Counsel*
ASHLEY A. BARBONE (0083666)
Assistant Attorneys General
Office of the Ohio Attorney General
Education Section
30 E. Broad Street, 16th Floor
Columbus, OH 43215
Telephone: (614) 644-7250
Facsimile: (614) 644-7634
Todd.Marti@OhioAGO.gov
Ashley.Barbone@OhioAGO.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

    I hereby certify that the foregoing was filed electronically on January 7, 2022. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's systems.

                                       */s/ Todd R. Marti*

                                       TODD R. MARTI (0019280)
                                       Assistant Attorney General