IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| Aaron M. Ogletree | ) | Case No. 1:21-cv-00500 |
| | ) | |
| *Plaintiff,* | ) | Judge J. Philip Calabrese |
| | ) | |
| vs. | ) | **Plaintiff's reply in support of the** |
| | ) | **motion for summary judgment** |
| Cleveland State University, et al. | ) | |
| | ) | |
| *Defendants.* | ) | |

Defendants do not dispute the impact of their position would be that the Fourth Amendment affords students less protection inside their own homes than at their schools. Unless the Court is willing to create a new exception to the Fourth Amendment, that position must be rejected.

**I. The bedrock of the Fourth Amendment is that individuals have a reasonable expectation of privacy inside their own homes.**

Where the Fourth Amendment is concerned, "'the home is first among equals.'" *Lange v. California*, 141 S. Ct. 2011, 2018 (2021) (*quoting Florida v. Jardines*, 569 U.S. 1, 6 (2013)). "Freedom from intrusion into the home or dwelling is the archetype of the privacy protection secured by the Fourth Amendment." *Payton v. New York*, 445 U.S. 573, 587 (1980) (internal quotation omitted). It is the Amendment's "very core." *Silverman v. United States*, 365 U.S. 505, 511 (1961). This in mind, the Supreme Court has consistently "stressed 'the overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic.'" *Oliver v. United States*, 466 U.S. 170, 178 (1984) (*quoting Payton*, 445 U.S. at 601). The University's room scan practice runs afoul of this bedrock principle.

Nevertheless, the University argues that where tests are concerned students have no reasonable expectation of privacy within their own homes. That is remarkable proposition indeed. To support it, Defendants cobble together an unrelated series of quotes borrowed from unrelated Fourth Amendment contexts. None apply here. And the proposition for which the University cites them would trample the central tenet of the Fourth Amendment. The Court should reject it.

The University first claims that citizens enjoy no reasonable expectation of privacy inside their homes if the "conduct" at issue is "routine," and cites *California v. Ciraolo*, 476 U.S. 207 (1986) and *Florida v. Riley*, 488 U.S. 445 (1989), in support. This claim is misleading. Both those cases involve the plain view doctrine's application to people growing marijuana in their backyards. In the first, the Court held "it is unreasonable for [the defendant] to expect that his marijuana plants were constitutionally protected from being observed with the naked eye from an altitude of 1,000 feet." *Ciraolo*, 476 U.S. at 215. In a similar vein, the Court held in the second that the defendant had no reasonable expectation of privacy because "what was growing in the greenhouse was subject to viewing from the air." *Riley*, 488 U.S. at 450. The plain view doctrine has nothing to do with this case. And the University cannot be permitted to use that exception to swallow the entirety of the Fourth Amendment's rule protecting the sanctity of the home.

The University's reference to *City of Ontario v. Quon*, 560 U.S. 746 (2010) and *O'Connor v. Ortega*, 480 U.S. 701 (1987), is equally misplaced. Those cases involved the privacy expectations of government employees at work. *Quon* involved the right

of a government employer to read text messages on a government-owned pager issued to employees. *Quon*, 560 U.S. at 750. The Court there explicitly assumed that the employee did have a reasonable expectation of privacy and that a "Fourth Amendment search" occurred. *Id.* at 760. For its part, *O'Connor* concerned whether government employers may search the private property of their employees. *O'Connor*, 480 U.S. at 709. Contrary to the University's claim, the case created no broad Fourth Amendment exception for so-called "operational realities." What the *O'Connor* plurality held is that some government workplaces are "so open to fellow employees or the public" that an employee would not have a reasonable expectation of privacy there, and that the determination "must be addressed on a case-by-case basis." *Id.* at 711. The plurality does not apply to the search of a home by a public school official and no court has held otherwise.

Finally, the University's passing reference to *Kyllo v. United States*, 533 U.S. 27, 34 (2001), regarding government surveillance by "sense-enhancing technology" in "general public use" is irrelevant for any of several reasons. At the start, holding that the University's room scan practice is not a search because the public can buy webcams cannot be squared with *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985), which established that the Fourth Amendment does indeed apply when public school officials look for rule violations. What's more, it would mean that students have less of an expectation of privacy inside their homes than at their schools. That cannot be so.

Of equal import, *Kyllo's* reference to "general public use" concerned "sense

3

enhancing technology" used by the law enforcement for surreptitious surveillance. The Court said so explicitly: "Where, as here, the Government uses a device that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion, *the surveillance* is a 'search' and is presumptively unreasonable without a warrant." *Id*. at 40 (emphasis added). The room scan practice is not surreptitious surveillance. Though intrusive all the same, it is something different altogether.

In any event, applying *Kyllo* would not avail the University. To be of "general public use," the public must be able to *use* the technology to obtain at their will information that "could not otherwise have been obtained without physical 'intrusion into a constitutionally protected area.'" *Id*. at 34 (*quoting Silverman*, 365 U.S. at 512). The question is not whether someone could merely buy the piece of equipment. *See United States v. Broadhurst*, No. 3:11-cr-00121, 2012 U.S. Dist. LEXIS 168893, at *19 (D. Ore. Nov. 28, 2012) ("[T]here is a difference between a device that can be purchased by the public and 'general public use.'"). It is whether a member of the public could then use the equipment to see inside the home without authorization from the homeowner. A webcam does not meet that criteria. That stands in contrast to a random passerby seeing into an open window with a pair of binoculars or a flashlight. Either way, *Kyllo* did not hold that government intrusion into the home is permissible whenever the technology it uses happens to be in general public use. *See Morgan v. Fairfield Cty.*, 903 F.3d 553, 572 (6th Cir. 2018) (Thapar, J., concurring in part and dissenting in part). ("What to do if the

4

technology *is* in general public use, the Court has not said.") (emphasis in original).

The Supreme Court does not casually or impliedly create exceptions to the Fourth Amendment's protection of the home. "In keeping with the 'centuries-old principle' that the 'home is entitled to special protection,'" the Court has instead "jealously and carefully drawn" exceptions to the warrant requirement for intrusion into the home. *Lange*, 141 S. Ct. at 2018–19 (*quoting Georgia v. Randolph*, 547 U.S. 103, 109 (2006)). The University advocates for an exception that does not exist, and this Court should not create it.

## II. The suspicionless search practice is unconstitutional.

The two-pronged *T.L.O.* test is the standard to apply to this case. To pass constitutional muster the University's practice must satisfy both prongs. It satisfies neither.

### A. *Because the University conducts room scans without reasonable suspicion, the practice fails T.L.O.*

As explained in the motion, the Supreme Court has held that *T.L.O.* requires that school officials have "reasonable suspicion" before they may search students for a possible violation of school rules. *Safford Unified Sch. Dist. #1 v. Redding*, 557 U.S. 364, 370 (2009). Lower courts since *T.L.O.*—including the Northern District of Ohio—have consistently held the same. (*See* motion at 10–11, collecting cases); *Jackson v. Ladner*, 626 Fed. Appx. 80, 86 (5th Cir. 2015); *Rabinovitz v. City of Los Angeles*, 287 F. Supp. 3d 933, 958 (C.D. Cal. 2018); *Deyo v. Tomball Indep. School Dist.*, 144 F. Supp. 3d 905, 917 (S.D. Tex. 2015); *Lausin v. Bishko*, 727 F.Supp.2d 610, 629 (N.D. Ohio 2010); *Cole v. Cent. Greene School Dist.*, No. 2:19-cv-00375, 2019 U.S. Dist. LEXIS 222382, at *34–35 (W.D. Pa. Dec. 27, 2019); *Jorge v.*

*Powell*, No. 18-14675, 2019 U.S. Dist. LEXIS 86239, at *3 (D.N.J. May 21, 2019); *Woods v. Rio Rancho Pub. Schs.*, No. 17-CV-492, 2019 U.S. Dist. LEXIS 8236, at *11 (D.N.M. Jan. 17, 2019). The University cannot and does not argue its room scan practice is supported by reasonable suspicion. This alone renders the room scan practice unconstitutional as a matter of law.

The University's contention that reasonable suspicion is not required ignores *Stafford* and the slew of cases contradicting their position. The University instead cites a series of cases from contexts that have no application here.

Except for two, none of the cases the University cites involve searches of students by school officials. Both are distinguishable on their face. *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646 (1995) and *Board of Education of Independent School District of Pottawatomie County. v. Earls*, 536 U.S. 822 (2002), permitted suspicionless "drug testing for students involved in both athletics and non-athletic extracurricular activities." *Cummerlander v. Patriot Preparatory Acad., Inc.*, 86 F. Supp. 3d 808, 819 (S.D. Ohio 2015). But the Court has never upheld suspicionless drug testing "for the entire student population," let alone permitted other types of suspicionless searches by school officials. *Cummerlander*, 86 F. Supp. 3d at 819. In fact, the holdings in *Vernonia* and *Earls* centered in large part on the fact that students who "go out for the team" have a reduced expectation of privacy when measured against the student body as a whole. *Vernonia Sch. Dist. 47J*, 515 U.S. at 662. More to the point, the Supreme Court later held in *Safford* that the Fourth Amendment demands that school officials have reasonable suspicion before

conducting searches in contexts outside drug use. That holding is binding here.

The only other aspect of the University's argument here warranting discussion is the reference to "heavily regulated activity." (Opposition at 7). To put it mildly, that doctrine has nothing at all to do with this case. Over the past half century, the Supreme Court has recognized four highly regulated industries in which there is "such a history of government oversight that no reasonable expectation of privacy could exist for a proprietor over the stock of such an enterprise." *City of Los Angeles v. Patel*, 576 U.S. 409, 424 (2015) (internal quotation omitted). They are liquor sales, firearms dealing, mining, and running an automobile junkyard. *Id*. "Simply listing these industries refutes" the University's argument that undergraduate testing "should be counted among them." *See id*.

The law is settled that school officials must meet "a standard of reasonable suspicion" before searching a member of the general student population. *Safford Unified Sch. Dist. #1*, 557 U.S. at 370. No amount of quotes from other Fourth Amendment contexts can change that. Because the University lacks reasonable suspicion, its practice is unconstitutional.

B. *Even if there were reasonable suspicion, the search would be unconstitutional because it is unreasonably excessive.*

Even if Defendants had reasonable suspicion, its generalized practice of room scan searches would still not survive. A search by school officials is permissible only if it is not "excessively intrusive." *T.L.O.*, 469 U.S. at 381. This determination requires "balancing the scope and the manner in which the search is conducted in light of the students' reasonable expectations of privacy, the nature of the intrusion,

and the severity of the school officials' need in enacting such policies." *Brannum v. Overton County Sch. Bd.*, 516 F.3d 489, 496 (6th Cir. 2008) (*citing Beard v. Whitmore Lake Sch. Dist.*, 402 F.3d 598, 604 (6th Cir. 2005)); *accord G.C. v. Owensboro Pub. Sch.*, 711 F.3d 623, 632 (6th Cir. 2013). Those factors weigh against the University. As explained, the expectation of privacy is at its zenith in the home. By contrast, the University's own written policies and lax attitude towards faculty discretion belie a vital need for suspicionless intrusion into student homes. And although keeping students from cheating on tests is an admittedly legitimate aim, "a valid purpose does not necessarily validate the means employed to achieve it." *Brannum*, 516 F.3d at 497. Given the balance of factors, CSU's practice is not "justifiably" intrusive and is thus unreasonable. *See id.* at 496.[1]

Though the Court need not reach the issue because the University cannot show the prerequisite reasonable suspicion, the room scan practice is excessively intrusive and cannot satisfy the second prong of *T.L.O.*

## CONCLUSION

For the reasons stated above, the Court should grant summary judgment in Plaintiff's favor.

---

[1] It is unclear why, but the cases the University cites on this point all involve searches of mass-transit passengers as a means of preventing terrorism. Naturally, that is a context far removed from this case.

Respectfully submitted,

/s/ Matthew D. Besser
Matthew D. Besser (0078071)
Cathleen M. Bolek (0059884)
**BOLEK BESSER GLESIUS LLC**
Monarch Centre, Suite 302
5885 Landerbrook Drive
Cleveland, Ohio 44124
T 216.464.3004
F 866.542.0743
cbolek@bolekbesser.com
mbesser@bolekbesser.com

*Counsel for Plaintiff*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that: a copy of the foregoing was filed this 7th day of January, 2022; this case is assigned to the standard track; and, this motion is within the page limits of Local Rule 7.1(f). Notice of the foregoing will be served by operation of the Court's electronic filing system upon:

Todd R. Marti
Ashley A. Barbone

*Counsel for Defendants*

/s/ Matthew D. Besser
*Counsel for Plaintiff*