**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| Aaron M. Ogletree | ) | Case No. 1:21-cv-00500 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| vs. | ) | **Plaintiff's motion to enforce and** |
| | ) | **for a permanent injunction** |
| Cleveland State University, et al. | ) | |
| | ) | |
| Defendants. | ) | |

Cleveland State's room-scan practice intrudes not only upon Aaron Ogletree's privacy rights. It intrudes upon the privacy rights of any CSU student subjected to a warrantless, suspicionless video search of their home. Ogletree filed this case seeking declaratory and injunctive relief for himself and those other students. A plaintiff challenging a warrantless-search policy or practice may seek injunctive relief to enjoin its use against anyone whose rights it violates. And federal courts have traditionally held equitable authority to issues such injunctions. After briefing, the Court granted summary judgment in Ogletree's favor, finding the room-scan practice unconstitutional. The appropriate remedy is to enjoin CSU from continuing it.

Yet the University has chosen to ignore the Court's decision and continues to impose this constitutional harm on its students. Remote exams have already begun for the new school year. By the time this issue is fully briefed, the University will almost certainly have conducted many more unconstitutional searches of student homes. That makes time of the essence.

Ultimately, there are two related questions for the Court. The first is whether the Court has equitable authority to enforce its own ruling. The second is whether CSU may continue a practice the Court has already held unconstitutional. The answer to the first is of course; the answer to the second is of course not. Ogletree therefore moves the Court to order the relief sought in the Complaint and enjoin CSU from further warrantless, suspicionless room-scan searches of student homes before remote testing.

A.    *A plaintiff challenging a warrantless-search policy or practice may seek injunctive relief to enjoin its use against anyone whose rights it violates.*

"A federal court has broad power to restrain acts *which are of the same type or class as unlawful acts which the court has found to have been committed* or whose commission in the future[,] unless enjoined, may fairly be anticipated from the defendant's conduct in the past." *NLRB v. Express Publ'g Co*., 312 U.S. 426, 435 (1941) (emphasis added) By extension then, a "'person subject to a statute authorizing searches without a warrant or probable cause may bring an action seeking a declaration that the statute is unconstitutional and an injunction barring its implementation.'" *City of Los Angeles v. Patel*, 576 U.S. 409, 417 (2015) (*quoting Illinois v. Krull*, 480 U.S. 340, 354 (1987)). That is what Ogletree did. He sought a declaration that CSU's room-scan practice violates the Fourth Amendment and an injunction against the practice. Procedurally, there is nothing atypical about that and the Court has authority to issue the remedy he seeks.

A party bringing a facial challenge to state action "seeks to vindicate not only his own rights, but those of others who may also be adversely impacted by the [state

action]." *City of Chicago v. Morales*, 527 U.S. 41, 55 n.22 (1999); *accord Platinum Sports v. Snyder*, 715 F.3d 615, 617 (6th Cir. 2013). A successful challenge "invalidates a law in all of its applications, 'forbidd[ing]' any enforcement of it." *Platinum Sports*, 715 F.3d at 617 (*quoting Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)). "The upshot is that a State may not enforce such a law against anyone. *Platinum Sports*, 715 F.3d at 617. Otherwise, every similarly situated person "would have a cognizable injury until it filed and won what would become a parade of lawsuits." *Cf. id.* (finding no injury to the plaintiff where the court already enjoined the government action in a prior case).

The Second Amended Complaint seeks to vindicate not only Ogletree's rights, but also other CSU students "adversely impacted" by the video searches. (Second Amended Complaint at ¶ 71, Doc. #17, Page ID #153) ("CSU's video searches as described above violate Ogletree's *and other students' rights* under the Fourth and Fourteenth Amendments.") (emphasis added). The relief it seeks is "a declaratory judgment holding that Defendants have violated Ogletree's *and other students' constitutional rights*" and an injunction barring CSU "*from conducting suspicionless video searches of students' homes* as part of the University's remote-testing process." (*Id.* at pg. 10) (emphasis added). Ruling in Ogletree's favor, the Court held that "Cleveland State's practice of conducting room scans is unreasonable under the Fourth Amendment." (Order at 24, Doc. #37, Page ID #570). For that reason, CSU may not use them "against anyone." *See Platinum Sports*, 715 F.3d at 617. The Court should issue an injunction saying so.

3

The Supreme Court's holding in *Chandler v. Miller* underscores the point. The three individual plaintiffs in that case challenged a Georgia statute requiring statewide political candidates to take a drug test. 520 U.S. 305, 310 (1997). They sought "declaratory and injunctive relief barring enforcement of the statute." *Id*. As the United States pointed out in its amicus brief, "the complaint made no class allegations…." *Chandler v. Miller*, 1996 WL 711200 at 3 (United States Amicus Brief, 1996). Applying the same "special needs" balancing test used in this case, the Court nevertheless held that "the Fourth Amendment precludes the suspicionless search[es], no matter how conveniently arranged." *Id*. at 323. It therefore reversed the court of appeals' decision affirming the district court's denial of the injunction against the statute's enforcement. *Id*. From a procedural—and remedial— standpoint, this case is no different. If the Supreme Court in *Chandler* barred enforcement of a state statute in that individual case, the comparatively modest injunction against one school is permissible and appropriate in this one as well.

Nor must this Court search hard to find other examples of the Supreme Court striking down state action *in toto* under the Fourth Amendment in cases not formally brought as class actions. For instance, in *City of Los Angeles v. Patel*, 576 U.S. at 413, several plaintiffs brought a Fourth Amendment challenge to a Los Angeles ordinance regarding hotel-guest records, seeking to enjoin the city from enforcing it. The Supreme Court held the ordinance facially invalid, thus prohibiting the city from enforcing it. *Id*. at 428. Another Fourth Amendment case at the Court involved individual plaintiffs challenging a state-hospital policy of drug

testing pregnant patients. *Ferguson v. City of Charleston*, 532 U.S. 67, 73 (2001). Once again applying the "special needs" test, the Court held that the "Fourth Amendment's general prohibition against nonconsensual, warrantless, and suspicionless searches necessarily applies to such a policy." *Id*. at 86. As with *Chandler*, the Court's holdings in *Patel* and *Ferguson* reflect this Court's authority to stop the University from imposing its room-scan practice on other students.

In most cases challenging the constitutionality of government action, "[w]hether plaintiff proceeds as an individual or on a class-suit basis, the requested relief generally will benefit not only the claimant but all other persons subject to the practice or the rule under attack." Wright & Miller, 7A Fed. Prac. & Proc. Civ. § 1771 (4th ed. 2008). Because the University's practice is constitutionally offensive, the appropriate equitable relief should apply not only to Ogletree himself, but also to all other students "subject to the practice."

B.    *Federal courts have traditionally held the equitable authority to enjoin conduct that violates the rights of non-parties.*

"[T]here is a substantial historical basis for the concept of injunctive relief that extends to the benefit of nonparties." *City of Chicago v. Barr*, 961 F.3d 882, 914 (7th Cir. 2020). Indeed, the equitable power of a federal court to issue injunctions benefitting non-parties dates back at least to the 1800s, if not further. *See* Mila Sohoni, *The Lost History of The 'Universal' Injunction*, 133 HARV. L. REV. 920, 935–41 (2020); Amanda Frost, *In Defense of Nationwide Injunctions*, 93 N.Y.U. L. REV. 1065, 1090 (2018) (nationwide injunctions "can be viewed as an extension of the bill of peace available in England at the time of the Constitution's framing, which also

allowed courts to grant remedies to nonparties"); *see* 1 John Norton Pomeroy, A TREATISE ON EQUITY JURISPRUDENCE § 260, at 451–52 (4th ed. 1918) (recognizing that equity courts have traditionally ordered "complete and final relief … to an entire community by means of one judicial decree, which would otherwise require an indefinite amount of separate litigation by individuals….").

No matter how far back the practice dates, over the past century the Supreme Court has repeatedly approved of—or even issued—injunctive relief benefitting non-parties. In a 1913 case, the Court "enjoined a federal statute from being enforced not just against the plaintiffs but also against 'other newspaper publishers.'" Sohoni, 133 HARV. L. REV. at 924–25 (1920) (*quoting Lewis Publishing Co. v. Morgan*, 29 U.S. 288 (1913)). A decade later in *Pierce v. Society of Sisters*, 268 U.S. 510, 536 (1925), a case brought by individual plaintiffs, the Court enjoined Oregon from enforcing its compulsory education law against anyone. In doing so, it recognized that "[p]revention of impending injury by unlawful action is a well recognized function of courts of equity." *Id.* More famously (and apt here) the Court has also affirmed injunctions benefiting non-party schoolchildren. In *West Virginia State Board of Education v. Barnette*, the Court affirmed an injunction that "restrained and enjoined" West Virginia from enforcing its compulsory flag-salute law against the "children of the plaintiffs, *or any other children having religious scruples against such action*…." Sohoni, 133 HARV. L. REV. at 990, n. 459–62 (*citing* 319 U.S. 624, 642 (1943)) (emphasis added). The Court continued to approve such injunctive relief over the following decades. *See, e.g.*, *Weinberger v. Wiesenfeld*, 420

6

U.S. 636, 653 (1975) (affirming a nationwide injunction in an Equal Protection case against a federal benefit program even though class certification was denied).

Keeping with Supreme Court precedent, the courts of appeals have commonly recognized that federal courts may issue injunctions benefitting non-parties, even in cases not filed as class actions. *See City of Chicago*, 961 F.3d at 914; *Bresgal v. Brock*, 843 F.2d 1163, 1169 (9th Cir. 1987); *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1136 (11th Cir. 1984) ("The plaintiff correctly states that injunctive relief may benefit individuals not party to the action, and that classwide injunctive relief may be appropriate in an individual action."); *Evans v. Harnett County Bd. of Educ.*, 684 F.2d 304, 306 (4th Cir. 1982) ("There is no general requirement that an injunction affect only the parties in the suit."); *Meyer v. Brown & Root Construction Co.*, 661 F.2d 369, 373–74 (5th Cir. 1981) ("Injunctive relief which benefits non-parties may sometimes be proper even where the suit is not brought as a Rule 23 class action."); *Brito v. Zia Co.*, 478 F.2d 1200, 1207 (10th Cir. 1973) ("An injunction may properly be issued to benefit those not before the court."). Though more cautious about it, the Sixth Circuit has also held that class certification is not an inherent prerequisite for a court to issue an injunction that benefits nonparties. *See Sharpe v. Cureton*, 319 F.3d 259, 273 (6th Cir. 2003);[1] *Washington v. Reno*, 35 F.3d 1093, 1103–04 (6th Cir. 1994).

---

[1] Though the Sixth Circuit in *Sharpe* stated that injunctions benefiting a class in an individual suit are rarely justified, this is one case where it is. The *Sharpe* court declined to issue an injunction in that case because it was "not based upon a requisite factual showing of likely future irreparable harm" to others besides the

For that matter, district courts across the country have exercised exponentially broader injunctive power than the relief sought here. Any casual follower of jurisprudence knows that multiple district courts over the past two decades have issued "nationwide" or "universal" injunctions, extending well-beyond the parties in the case. "Across [the Obama and Trump] administrations, federal district courts have issued a slew of injunctions blocking the executive branch from enforcing federal laws, regulations, or policies '*not only against the plaintiff, but also against anyone,*' even in cases not certified as class actions." Sohoni, 133 HARV. L. REV. at 922 (*quoting* Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 HARV. L. REV. 417, 419 (2017)) (emphasis in original).[2] The appropriate relief here is of course far more modest. The point remains though: a district court may issue injunctions that protect individuals similarly situated to the plaintiff from government action the court has declared unconstitutional.

Precedent aside, principles of equity, judicial economy, and common sense all counsel the same conclusion. Accepting CSU's position would mean that absent Rule 23 class certification, the government could continue to employ a practice already declared unconstitutional against anyone other than the plaintiff. Each affected citizen would need to bring their own suit against the practice to exercise their constitutional rights. The resulting barrage of litigation would swamp court

---

plaintiffs. 319 F.3d at 274. There is no factual dispute about the likelihood of future harm here: CSU admits it is continuing to foist room scans on other students.

[2] Even the most strident critics of nationwide injunctions recognize there is historical precedent for courts in equity "allowing a successful plaintiff to obtain an injunction protecting all similarly situated persons." Bray, 131 HARV. L. REV. at 427.

dockets, as each individual plaintiff brings the same case against the same defendant before the same court, merely to reaffirm what the court has already held. Worse yet, it would undermine the dual purposes of Section 1983. First, "to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law…." *Mitchum v. Foster*, 407 U.S. 225, 242 (1972). And second, "'to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights' and to provide related relief." *Richardson v. McKnight*, 521 U.S. 399, 403 (1997) (*quoting Wyatt v. Cole*, 504 U.S. 158 (1992)).

To apply the University's position to actual cases is to understand why it is misguided. Consider the Sixth Circuit case *Brannum v. Overton County School Board*, 516 F.3d 489 (6th Cir. 2008), also involving the Fourth Amendment privacy rights of students. In that case, 34 individual middle-school students brought a Fourth Amendment case "alleging that the defendant school authorities violated the students' constitutional right to privacy by installing and operating video surveillance equipment in the boys' and girls' locker rooms…." *Id*. at 491–92. It was not a class action, but the plaintiffs sought an injunction "precluding Defendants from placing hidden video and/or audio surveillance equipment" in areas of the school "where persons have a reasonable expectation of privacy…." *See Brannum v. Overton Cty. Sch. Bd.*, M.D. Tenn. Case No. 2:03-cv-00065 (Second Amended Complaint at 14, Doc. #209–28, Page ID #2810). On appeal, the Sixth Circuit held that the "videotaping was a search, unreasonable in its scope, and violated the

students' Fourth Amendment privacy rights." *Brannum*, 516 F.3d at 498. Given that ruling, none could credibly argue the school could continue videotaping the plaintiffs' classmates because they were not parties themselves. Yet that is what CSU argues here. Its position defies not only precedent, but common sense as well.

The Court has the equitable authority to enjoin CSU from continuing its unconstitutional practice. It should do so.

C.     *The University may not sidestep the Court's Order by imposing*
       *unconstitutional conditions upon its students.*

The University's response to the Court's Order magnifies the need for an injunction. CSU notified its faculty and students that it would continue the room-scan practice held unconstitutional and that if a student wants (or by extension needs) to take a remote exam at home, they forfeit their Fourth Amendment protections against unreasonable searches. That self-selected remedy itself violates the Fourth Amendment.

Under the unconstitutional-conditions doctrine, "the government may not deny a benefit to a person because he exercises a constitutional right." *Koontz v. St. Johns River Water Mgt. Dist.*, 570 U.S. 595, 604 (2013); *see Frost & Frost Trucking Co. v. R.R. Com. of California*, 271 U.S. 583, 598 (1926). The doctrine "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz*, 570 U.S. at 604. The Supreme Court has applied it in various contexts. *Id.*; *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Courts within the Sixth Circuit have as well. Among those contexts is the Fourth Amendment's protection against unreasonable searches and seizures. *G & V*

*Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1077 (6th Cir. 1994); *see Midwest Retailer Associated v. City of Toledo*, 563 F. Supp. 2d 796, 804 (N.D. Ohio 2008) (Carr, J.) (finding substantial likelihood a municipal ordinance violated the Fourth Amendment by imposing unconstitutional conditions and granting a temporary restraining order); *cf. Lebron v. Secy., Florida Dept. of Children & Families*, 710 F.3d 1202, 1218 (11th Cir. 2013) (applying the unconstitutional-conditions doctrine to the "Fourth Amendment right to be free from unreasonable searches"). In fact, the unconstitutional-conditions doctrine is "especially important in the Fourth Amendment context." *United States v. Scott*, 450 F.3d 863, 867 (9th Cir. 2006).

CSU may not force its students to forego their constitutional privacy rights as a condition of taking a remote test at home. That is what they are continuing to do though, and the Court should not permit it to go on. As for those students who have no reasonable option but to test from home, CSU offers no more than a vague instruction to contact school administration. That is not a constitutionally adequate protection of Fourth Amendment rights. In short, CSU does not get to choose its own remedy and the one it has chosen is still unconstitutional.

For the reasons stated above, and for the reasons in the Court's Order granting summary judgment, the Court should enjoin the University from further warrantless, suspicionless video searches of students' homes as part of its remote-testing practices.

Respectfully submitted,

 /s/ Matthew D. Besser
Matthew D. Besser (0078071)
Cathleen M. Bolek (0059884)
**BOLEK BESSER GLESIUS LLC**
Monarch Centre, Suite 302
5885 Landerbrook Drive
Cleveland, Ohio 44124
T 216.464.3004
F 866.542.0743
cbolek@bolekbesser.com
mbesser@bolekbesser.com

*Counsel for Plaintiff*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that: a copy of the foregoing was filed this 10th day of October, 2022. Notice of the foregoing will be served by operation of the Court's electronic filing system upon:

Todd R. Marti
Ashley A. Barbone

*Counsel for Defendants*

 /s/ Matthew D. Besser
*Counsel for Plaintiff*

12